## Commonwealth *v.* Armbruster, Appellant.

Submitted September 19, 1973. Before Wright, P. J., Watkins, Jacobs, Hoffman, Spaulding, Cercone, and Spaeth, JJ.

416

*Nino V. Tinari,* for appellant.

*Charles A. Haddad, James T. Ranney* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY SPAETH, J., November 16, 1973:

Appellant and his co-defendant were tried together for blackmail and conspiracy and found guilty by a jury.

Appellant's first argument is that he was deprived of his constitutional right to effective assistance of counsel. He and his co-defendant each had separate counsel. However, counsel were apparently partners in the same firm,* and appellant argues that "one law

---

* We say apparently because there is no testimony or other evidence that they were partners. However, their names appear on the backer of the Motion for New Trial and in Arrest of Judgment with the same address and telephone number. For the purposes of this appeal, we shall assume that they were indeed partners at all times relevant to this case.

firm cannot effectively represent co-defendants with conflicts of interest."

The difficulty with appellant's argument is that he does not identify any conflict of interest as a result of which he might have been harmed, nor does any appear on the record. Indeed, appellant's brief states: "It is clear from the record that defense counsel exerted every effort in the defense of the co-defendants. Counsel strived to obtain not guilty verdicts for *both* defendants." (Emphasis in original.)

In *Commonwealth v. Wilson*, 429 Pa. 458, 240 A. 2d 498 (1968), two gang members had been represented by one attorney on a charge of murder. On advice of counsel, Wilson had pleaded guilty to murder, while his co-defendant had pleaded guilty to second-degree murder. The court held that dual representation by one attorney was not enough standing alone to create an inherent conflict of interest. "Admittedly [*Commonwealth ex rel.*] Whitling [*v. Russell*, 406 Pa. 45, 176 A. 2d 641 (1962)] announces the prophylatic rule that whenever a conflict of interest reveals itself to an appellate court the conviction below cannot stand, even though the appellant may have been unable to show that any specific harm befell him at trial. However, one never reaches this prophylactic rule unless and until the defendant can demonstrate that a conflict in fact existed at trial. Unfortunately for appellant, there is no prophylactic rule equating dual representation with conflict of interest. Quite the contrary, this court has held that dual representation alone does *not* amount to a conflict of interest. See Commonwealth ex rel. Corbin v. Myers, 419 Pa. 139, 213 A. 2d 356 (1965), *cert. denied*, 386 U.S. 1013 . . . (1967). To make the dual representation rise to a true conflict, appellant need not show that actual harm resulted, for that would vitiate Whitling but he must at least show the possibility of harm, *e.g.*, that he had a defense inconsistent with that

advanced by the other client, or that counsel neglected his case in order to give the other client a more spirited defense. Cf. Commonwealth v. Meehan, 409 Pa. 616, 187 A. 2d 579 (1963)." 429 Pa. at 463, 240 A. 2d 498, 501 (1968) (emphasis in original). Accord, Commonwealth v. Wheeler, 444 Pa. 164, 281 A. 2d 846 (1971); Commonwealth v. Williams, 435 Pa. 550, 257 A. 2d 544 (1969); Commonwealth v. Resinger, 432 Pa. 398, 248 A. 2d 55 (1968).

Since a conflict of interest will not be found from the mere fact of dual representation by one attorney, a fortiori it will not be found from the mere fact that the attorneys for two co-defendants are partners* This conclusion does not preclude appellant from seeking relief under the Post Conviction Hearing Act if he believes that an evidentiary hearing would reveal a conflict of interest.

Appellant further contends that the Commonwealth failed to prove beyond a reasonable doubt that there was an agreement to enter into a conspiracy, and that the verdict was contrary to the weight of the evidence.

---

* On the subject of counsel's responsibility in the representation of co-defendants, we call attention particularly to the ABA Code of Professional Responsibility, DR 5-105 ("Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer"), and to ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function, §3.5 ("Conflict of Interest") (Approved Draft, 1971) : "(b) Except for preliminary matters such as initial hearings or applications for bail, a lawyer or lawyers who are associated in practice should not undertake to defend more than one defendant in the same criminal case if the duty to one of the defendants may conflict with the duty to another. The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation."

The evidence may be summarized as follows: One John Oliver was arrested for aggravated assault and battery. His wife talked to appellant, who was a detective, and to appellant's co-defendant, Loftus, who was also a detective, offering them a sum of money to obtain her husband's freedom. They told her to bring $1,000 along with any exculpating witnesses the next morning. The Olivers then went with their attorney to the District Attorney's office, where it was arranged that Mrs. Oliver would take $600 in bills, the serial numbers of which had been noted, along with her husband's diamond ring to South Detective Headquarters. When she arrived there, she handed the $600 to Loftus and the ring to appellant. Inspector Smith, who had been alerted by the District Attorney's office, saw Loftus speak to Mrs. Oliver and her mother on the second floor of the headquarters before going into the courtyard, and saw him return from the first floor up the steps with his hand in his left trouser pocket. Smith then ordered Loftus to empty his pockets. Among the contents was the $600. Inspector Schultz followed a similar procedure with appellant and found the ring.

Loftus's defense was that Mrs. Oliver had asked to speak to him privately, then forced the money into his hand. He claimed he was on his way to Smith's office to report this when Smith asked him to empty his pockets. Appellant claimed to have been twenty feet away from Loftus and Mrs. Oliver when he heard Loftus yell something, saw him run into the headquarters, and then saw the ring fall onto the ground. He said he picked up the ring, and when Mrs. Oliver said it was Loftus who had dropped it, put it in his own pocket. Then Schultz appeared.

As appellant's brief states, "The entire case hinged on the credibility of Mr. and Mrs. Oliver versus the credibility of [appellant]." It is evident that the jury believed the Commonwealth's witnesses, not Loftus's

420 

or appellant's. The fact that each of the Olivers had prior convictions, and that Mrs. Oliver had made a prior inconsistent statement, were matters for the jury to appraise. On appeal we must view the evidence in the light most favorable to the Commonwealth. *Commonwealth v. Wrona*, 442 Pa. 201, 275 A. 2d 78 (1971). Further, to sustain a conviction of conspiracy there need not be direct proof of agreement between co-defendants to perform an illegal act. "[W]here the conduct of the parties indicates that they were acting together with a common and corrupt purpose in view, the jury may properly infer that a conspiracy did exist: Com. v. Albert, 151 Pa. Superior Ct. 184, 30 A. 2d 184 [1943]; Com. v. Rosen, 141 Pa. Superior Ct. 272, 14 A. 2d 833 [1940]." *Commonwealth v. Schwartz*, 210 Pa. Superior Ct. 360, 381, 233 A. 2d 904, 914 (1967). Applying these principles, it is apparent that the evidence was sufficient to allow the inference of an agreement and to sustain a conviction on the charges of blackmail and conspiracy.

The judgment of sentence is affirmed.

