Commonwealth *v.* Early, Appellant.

Submitted April 14, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*John H. Corbett, Jr.,* Trial Defender, *John J. Dean,* Chief, Appellate Division, and *Ralph J. Cappy,* Public Defender, for appellant.

*Robert L. Eberhardt,* Assistant District Attorney, *John M. Tighe,* First Assistant District Attorney, and *John J. Hickton,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., September 22, 1975:

This appeal arises from appellant's conviction by a jury of various charges including burglary, larceny, receiving stolen goods and conspiracy.[1] Appellant con-

---

1. Actually, this is an appeal from denial of appellant's post-conviction hearing act petition. However, because of confusion caused by appellant's numerous changes in counsel, no direct appeal was ever prosecuted. The Commonwealth concedes that appellant's failure to take a direct appeal was not a knowing and intelligent waiver of that right and consents to appellant's request to treat this as an appeal *nunc pro tunc,* so that questions of waiver and "final litigation" under the PCHA do not bar our reaching the merits of this appeal.

tends that the lower court erroneously refused to suppress certain physical evidence, the fruits of his crimes, because the affidavit to the search warrant was defective under *Aguilar v. Texas,* 378 U.S. 108 (1964) and improperly executed under *Commonwealth v. DeMichel,* 442 Pa. 553 (1971). We find these assertions to be without merit and will affirm.[2]

In the instant case, the affidavit to the search warrant, which was prepared by Sergeant John Hammer of the Allegheny Detective Bureau, stated the following:

"Information was received from an confidential informant that has proven his reliability in the past by supplying this officer with previous information that led to the arrest and conviction of other persons for violations of the law said arrests and convictions in part were: Donald Kibler for prostitution and vice charges and Joseph Stupar for Lottery law violations. The information received from the informant regarding the apartment of Alfred Early as related to this officer is as follows: That informant knows Alfred Early personally, has known him and has visited the apartment of Alfred Early many times in the last two weeks. Informant has met one Alonzo W. Morgan at the apartment also has met Elaine Butler age about 19 years has met also Mary Ellen Ward about 25 years at the Apartment. During the visits to the apartment the informant has engaged in conversations with Alfred Early, Mary Ellen Ward, and Alonzo Morgan and Elaine Butler, said conversations regarded stolen articles at the apartment and some of these articles were offered for sale to the informant by Alfred Early. One of the articles that the In-

---

2. Although the search was not conducted in appellant's presence or in his residence, the Commonwealth's attribution of possession of the goods to him gives him sufficient standing to challenge their admissibility. *Jones v. United States,* 362 U.S. 257 (1960) ; *Commonwealth v. Weeden,* 457 Pa. 436 (1974).

formant recalls as holding and viewing is a large Sterling Silver Coffee Pot that appears to be of antique vintage and said pot bears the names of William R. McGill and Caroline McGill. Further, informant said that he was shown four plastic bags, green in color, large trash bags (Plastic) which contained sterling silver pieces. These four bags were heavy in weight and contained different types and pieces of various styles and shapes. When shown to informant these four bags were concealed inside a blue Volkswagon station wagon bearing a Florida registration of 38D230. This exhibition of the silverware took place outside the apartment of Alfred Early on December 14, 1971 at early evening hours. Informant also stated that he personally viewed today the four plastic bags being placed inside the Volkswagon station wagon at 5th Avenue, Pittsburgh, Penna. 15219 and informant followed the car belonging to informant and observed the suspect known to informant as Alonzo Morgan and Alfred Early who is known to informant and also to this officer by sight place four plastic, green in color bags inside the herein described Volkswagon and we as I said before followed the suspects back to Alfred Early's home. The suspects entered the home and this officer left informant to observe the residence while I have come here for the search warrants for (1) the residence of Alfred Early, (2) the Volkswagon station wagon with Florida Reg. 38D230."

The warrant issued on the strength of these statements, and Sergeant Hammer proceeded to execute the warrant accompanied by the Pittsburgh Police. As the police car stopped in front of the apartment building, someone looking out of the window of the apartment to be searched shouted, "Here come the police." With that, the officers dashed up the steps to the apartment door. After announcing their identity and purpose, and knocking

eight or twelve times, Sergeant Hammer heard from within the clamor of hurried footsteps and a door slamming, but no one responded to his knocking. The officers then forcibly entered the apartment and detained its occupants. After a thorough search revealed numerous stolen articles, Early's cohorts were placed under arrest.[3] Although Early was not present then, he turned himself in after learning that there was a warrant for his arrest.

The two-pronged test for determining probable cause to issue a search warrant was established in *Aguilar v. Texas,* supra. First, the affidavit must set forth the underlying circumstances from which the informer concludes that the items to be seized are at the place to be searched. Second, the affidavit must set forth the underlying circumstances whereby the affiant has concluded that the informer is credible and his information reliable. In determining whether these facts adequately appear in the affidavit, we are not to use hypertechnical or niggardly rules of construction; but, rather, we are to give the affidavit a common-sense reading. *United States v. Ventresca,* 380 U.S. 102 (1965). In addition, in order not to discourage the police from obtaining search warrants, great deference must be paid to the determination of the issuing magistrate. *Jones v. United States,* 362 U.S. 257 (1960). In the instant case the affidavit established with particularity that the informant had provided the police with accurate and valuable information on at least two previous occasions. It also established how the informant came to know of the presence of the stolen goods in the apartment. Finally, although some of the informant's observations may have been as old as two weeks, the trash bags containing the silverware were seen in the

3. Apparently, Early assembled a burglary "ring" which committed the burglaries and delivered the fruits thereof to Early. In return, Early would supply his thieves with heroin commensurate to the depressed resale value of the goods. He also supplied them with food and shelter in return for their criminal assistance.

possession of Early on the day the warrant was issued. See *Commonwealth v. Eazer,* 445 Pa. 320 (1973). In any event, the items seen by the informant were not so readily saleable that no probable cause existed to believe they were still on the premises or in Early's automobile. *Commonwealth v. Jackson,* 227 Pa. Superior Ct. 7 (1974).

We also find that the police did not improperly execute the warrant. First, although this fact was disputed at the hearing below, Sergeant Hammer testified that he announced his identity and purpose prior to breaking in, which he did not do until he had knocked on the door eight or twelve times. Coupled with the fact that the police had been observed by an occupant of the apartment prior to entering the building, the occupants were given an adequate opportunity to surrender their privacy voluntarily. *Commonwealth v. DeMichel,* 442 Pa. 553 (1971). In any event, there is no Constitutional require-ment that the police afford suspects a reasonable op-portunity to destroy evidence; and where, as here, the police have reason to believe that evidence is being destroyed, or that suspects are fleeing, they may forcibly enter. *Commonwealth v. Dial,* 445 Pa. 251 (1971).

Judgments of sentence are affirmed.