374 A.2d 1291

COMMONWEALTH of Pennsylvania

v.

James Alan BURCH, Appellant.

COMMONWEALTH of Pennsylvania

v.

Sue Ann RIBERDY, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 8, 1976.

Decided June 29, 1977.

10

George E. Goldstein, Philadelphia, for appellants.

Stephen B. Harris, First Assistant District Attorney, Warrington, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

WATKINS, President Judge:

This appeal arises from the appellants' convictions of various offenses under The Controlled Substance, Drug, Device and Cosmetic Act of April 14, 1972, P.L. 233, and conspiracy, after a non-jury trial. Appellant Burch was sentenced on each of two indictments to imprisonment of one to eleven months, the sentences to run concurrently, and to pay the costs of prosecution on one indictment and half the cost of prosecution on the indictment jointly filed against appellant Riberdy. Appellant Riberdy was placed

12

on probation for one year and ordered to pay half the costs of prosecution on the charge in which she was jointly indicted with appellant Burch.

A search was made of Burch's residence pursuant to a search warrant and substantial amounts of controlled substances were seized. Riberdy was present at the residence when the search warrant was executed. The appellants contend that the evidence seized should have been suppressed as there was no probable cause for the issuance of a search warrant. An affidavit was taken by an undercover state police officer which formed the basis of the issuance of the warrant. The affidavit alleged that the officer had purchased marijuana in the past from a Carlos Guerrero, and that he made arrangements to purchase 20 pounds of marijuana from Guerrero. The affidavit further alleged that Guerrero and the officer went to a car wash to meet Guerrero's supplier (who turned out to be Burch) and that when Guerrero met the individual at the car wash they left in a car and about 15 minutes later returned. Guerrero and Burch were subsequently arrested and controlled substances were found in their possession. The affidavit also stated that Guerrero told the affiant that his supplier had just received 200 pounds of marijuana and described the appellant's house and gave his address.

A two-pronged test has been established for determining probable cause to issue a search warrant. First, the affidavit must set forth the underlying circumstances from which the informer concludes that the items to be seized are at the place to be searched. Second, the affidavit must set forth the underlying circumstances whereby the affiant has concluded that the informer is credible and his information reliable. *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Commonwealth v. Early,* 236 Pa.Super. 60, 64, 345 A.2d 197, 200 (1975). We are satisfied that the affidavit taken by the police officer meets the test. The first prong of the test is satisfied as Guerrero took the officer to meet his supplier. He told the officer that his supplier had just received a 200-pound shipment of marijua-

na. Guerrero had told the police officer, whom he did not know was an undercover agent, that he was going to meet his supplier and when Guerrero returned from the short trip that he took with Burch, they were arrested for possession of drugs. Burch lived a short distance from the car wash to which Guerrero had originally driven the officer to pick up the drugs, and it was reasonable to conclude that the shipment of the marijuana was at his home. The second prong of the test was also met as the affiant had purchased drugs from Guerrero in the past and could rely on his statement that his supplier had just received a large shipment of marijuana. We are also guided by the rule that, in judging probable cause, the issuing magistrate is not to be confined by restrictions on the use of his common sense, and his determination of probable cause should be given great deference by the reviewing court. *Commonwealth v. Williams*, 236 Pa.Super. 184, 345 A.2d 267 (1975).

Appellants contend that the affidavit was misleading as the police knew that, when Burch left the car wash with Guerrero to obtain marijuana for the undercover officer, he did not return to his home. We have carefully reviewed the affidavit and find that it does not appear to be misleading. Even though Burch did not return to his home with Guerrero to obtain marijuana which was to be sold to the officer, it is logical that he would have kept a large shipment of marijuana at his home. Accordingly, we find that the search warrant was properly issued upon probable cause.

Appellants also contend that the trial counsel (who was not the same lawyer as counsel on appeal) was ineffective as he did not raise the issue at trial that the affidavit requested a night search. The issue of ineffective assistance of counsel is properly raised on appeal where counsel on appeal did not represent the appellant at trial, and the grounds appear of record. *Commonwealth v. Graves*, 238 Pa.Super. 452, 356 A.2d 813 (1976). In this case, the search warrant was issued at 20 minutes after nine at night. Since drugs may be readily moved, a night search was warranted. Counsel does not have to raise every possible objection

available at trial, and he is not ineffective where he does not raise issues at trial that are without merit. *Commonwealth v. Betts*, 234 Pa.Super. 642, 341 A.2d 912 (1975).

██ Appellant Burch contends that the evidence seized from him when he was arrested at the car wash must be suppressed as his arrest was without probable cause. This conclusion is without merit. When Guerrero returned with the appellant in the appellant's automobile, both he and appellant were told they were under arrest, and both took flight. At that time, the police had probable cause to believe that the appellant was involved in the sale of the marijuana with Guerrero and the warrantless arrest was proper. The evidence established that the appellant was more than merely present at the scene of the crime.

██ Appellants next contend that trial counsel was ineffective as there was a conflict of interest in his representation of appellant Burch and appellant Riberdy at trial. The question of a conflict of interest was discussed by the trial court and both appellants agreed to have the same attorney represent them. Dual representation does not in and of itself raise a conflict of interest. In order to vitiate the proceedings, a conflict must appear from the facts of the proceedings as they exist on the record. *Commonwealth v. Smith*, 228 Pa.Super. 256, 323 A.2d 838 (1974). We do not find that the record manifests a conflict of interest.

Judgments of sentence affirmed.

HOFFMAN, J., files a dissenting opinion in which CERCONE and SPAETH, JJ., join.

SPAETH, J., files a dissenting opinion in which HOFFMAN and CERCONE, JJ., join.

HOFFMAN, Judge, dissenting:

I join in Judge Spaeth's dissenting opinion, but believe that an additional reason mandates vacating the judgment of sentence and ordering a new trial.

Appellants [1] challenge the validity of the warrant issued on October 15, 1974, authorizing a search of appellant-Burch's home in Doylestown Township, Bucks County. The Majority concludes that the face of the warrant states adequate probable cause. See Rule 2003(a), Pa.R.Crim.P., 19 P.S.Appendix; *Commonwealth v. Williams,* 236 Pa.Super. 184, 345 A.2d 267 (1975). I agree. The warrant recited the following facts: the affiant, a Pennsylvania State Trooper, had purchased a large amount of marijuana on two previous occasions from one Carlos "Guerro"; on October 15, 1974, the trooper met Guerrero and went with him to a pre-arranged meeting with Guerrero's supplier, appellant-Burch; appellant-Burch and Guerrero left the area in Burch's automobile and returned 15 minutes later with the contraband. The police subsequently arrested both men. The warrant recited two additional facts: (1) Guerrero had told the affiant that his supplier had recently received a shipment of 200 pounds of marijuana and (2) during the investigation, the police learned that appellant lived in the immediate area of the pre-arranged meeting place.

Appellants contend that the facts relied upon by the magistrate did not amount to probable cause because there was no evidence to prove that the marijuana was stored in Burch's house. Appellants are correct that the police must not only have probable cause that a person under investigation has committed a crime, but also that the evidence sought is in the place to be searched. *Commonwealth v. Simmons,* 450 Pa. 624, 301 A.2d 819 (1973); *Commonwealth v. Kline,* 234 Pa.Super.Ct. 12, 335 A.2d 361 (1975). As stated by the Supreme Court in *Simmons* :

" . . . [a]lthough the information supplied the magistrate '. . . must be tested with a commonsense, non-technical, ungrudging, and positive attitude, . . ', *Rosencranz v. United States,* 356 F.2d 310, 314 (1st Cir. 1966); *United States v. Ventresca,* 380 U.S. 102, 108–09,

---

1. Although appellant-Riberdy was not involved in any of the events described in this opinion, she was present when the challenged warrant was executed and was arrested as a result of contraband found pursuant to the warrant.

85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965), the information *must* be sufficient '. . . to enable the magistrate independently to judge of the validity of the informant's *conclusion that the narcotics were where he said they were.' Spinelli, [v. United States,* (1969)], 393 U.S. [410] at 413, 89 S.Ct. [584] at 587, 21 L.Ed.2d 637 (emphasis added). See also *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)." 450 Pa. at 629, 301 A.2d at 822.

However, I agree with the Majority that the warrant was sufficient on its face. Guerrero told the affiant that his supplier had recently received 200 pounds of marijuana. More importantly, the affiant stated that Burch lived nearby and that Burch and Guerrero had driven away to acquire the marijuana that Guerrero was to deliver to the affiant. The conclusion that the two men picked up the contraband at Burch's home was sufficiently strong to support a finding by the magistrate that Burch was storing the marijuana at his home.

Losing that argument, appellants contend that the information in the warrant was erroneous as proven by police testimony during trial, and that the lower court should have reconsidered the original denial of appellants' suppression motion. I agree. That contention is supported by the following facts elicited at trial from State Trooper Kaunert who was in a "back-up" vehicle during the drug transaction and who tailed appellant's vehicle during the entire episode:

"[By the District Attorney]:

"Q. What happened during the course of the surveillance from across the street in the car wash?

"A. The Monte Carlo parked in the car wash area, was there a short time, when the station wagon arrived at the scene. At this time the gentleman that was operating the Monte Carlo left the Monte Carlo, and got into the station wagon.

"Q. What happened after that?

"A. The station wagon and the gentleman that was in it that drove the Monte Carlo left the car wash and proceed-

ed north on 202 back toward Doylestown. Approximately a mile down the road they made a left off 202, went back another three-quarters of a mile, I would say, where there is a housing development, which is in like the form of a "U" or horseshoe.

"They drove around that housing development off to the left, and came back onto the street, which came off 202. They proceeded back toward 202.

"At this time the vehicle I was in dropped back a little bit, and we sort of lost sight of them for a moment. The next we saw them they were back on 202 proceeding south and heading back toward the car wash. They subsequently did turn into the car wash, and we were over near the shopping center.

"Q. Now, at the beginning of that following up of the side road, you mentioned over 202, did you substitute for another vehicle, which had also been attempting to follow this one?

"A. It was attempting to follow the Chevy?

"Q. Right.

"A. Yes, sir.

"Q. And how did you coordinate pursuit or surveillance?

"A. By radio, hand controlled. It was not a radio operable in the vehicle, a hand controlled radio.

"Q. What happened after the station wagon returned to the car wash?

"A. It returned to the car wash and went to the rear of the car wash. No longer observed it. At that time we just set there. We didn't really see what was going on."

After that information came out during the trial, appellant moved to reopen the suppression hearing. The lower court refused even to hear the motion because it believed that it could not reopen the hearing once the pre-trial motions judge had ruled on the claim. While that is generally the rule, Rule 323, Pa.R.Crim.P., 19 P.S.Appendix, contemplates an exception when a defendant discovers additional evidence not previously available: "(j) If the court determines that the evidence is admissible, such determination shall be final,

conclusive and binding at trial, *except upon a showing of evidence which was theretofore unavailable,* . . . " (Emphasis added). See *Commonwealth v. D'Angelo,* 437 Pa. 331, 263 A.2d 441 (1970); *Commonwealth v. Jones,* 229 Pa.Super.Ct. 224, 323 A.2d 879 (1974). In fact, a defendant risks waiving the issue if upon the discovery of the new evidence, he does not move to reopen the suppression hearing. *Commonwealth v. McIntyre,* 451 Pa. 42, 301 A.2d 832 (1973).

The law is settled that if the Commonwealth's evidence contradicts a warrant otherwise sufficient on its face, the court must suppress any evidence seized pursuant to the warrant:

> "In the instant case, the information supplied the magistrate in the affidavit, when considered in its entirety, was unquestionably sufficient to warrant a reasonable man in the conclusion that probable cause existed to issue the search warrant. But, this information was untrue and misleading in one very important respect. Moreover, the testimony at trial supports no other conclusion but that the police who supplied the information knew it was not in accord with the then existing facts. Under such circumstances, the warrant was invalid and the use of evidence resulting from the search based thereon was constitutionally proscribed. *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Commonwealth ex rel. Ensor v. Cummings,* 416 Pa. 510, 207 A.2d 230 (1965). To rule otherwise would permit the police in every case to exaggerate or to expand on the facts given to the magistrate merely for the purpose of meeting the probable cause requirement, thus precluding a detached and objective determination." *Commonwealth v. D'Angelo,* 437 Pa. 331, 337–38, 263 A.2d 441, 444 (1970).

The Majority concludes that "[e]ven though Burch did not return home with Guerro [sic] to obtain marijuana which was to be sold to the officer, it is logical that he would have kept a large shipment of marijuana at his home." At 13. That conclusion, however, was logical only because one could

infer from the facts recited in the warrant that appellant-Burch had gone to his home during the 15 minute period when the affiant did not observe him—as the Majority states, "Burch lived a short distance from the car wash to which Guerro [sic] had originally driven the officer to pick up the drugs, and it was reasonable to conclude that the shipment of the marijuana was at his home." At 13. Once Trooper Kaunert testified at trial that Burch did not return home, there was no evidence supporting an inference that the marijuana was in his home. Absent probable cause that the contraband was where the affiant claimed it to be, the search warrant was invalid and the evidence should have been suppressed. *Commonwealth v. Kline,* supra.

Therefore, I would vacate the judgment of sentence and order a new trial.

CERCONE and SPAETH, JJ., join in this dissenting opinion.

SPAETH, Judge, dissenting:

Appellants' convictions arose from the arrest of appellant Burch for possession with intent to sell a controlled substance, and the subsequent seizure of various controlled substances in the Burch residence after a search pursuant to a warrant. Appellant Riberdy was present at the time of the search. Appellants were tried together and were represented by the same attorney. They now contend that a conflict of interest existed, with the result that the attorney was ineffective. In my opinion this contention cannot be resolved on the present record. I would therefore remand for an evidentiary hearing.

1

The Majority states that "[t]he question of a conflict of interest was discussed by the trial court and both appellants agreed to have the same attorney represent them." (Majority at 1293) The implication is that appellants waived their right to claim that the attorney was ineffective because of a conflict of interest engendered by his dual representation.

It is well settled that by virtue of the Sixth Amendment a person accused of crime has the right to be represented by counsel at trial. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). An essential element of this right is the right to the "effective assistance of counsel." *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Commonwealth v. Breaker,* 456 Pa. 341, 318 A.2d 354 (1974); *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967). "Inherent in the right to effective assistance of counsel is the correlative right to be represented by counsel unburdened by any conflict of interest." *Commonwealth v. Breaker, supra* 456 Pa. at 343, 318 A.2d at 355, citing *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Commonwealth ex rel. Whitling v. Russell,* 406 Pa. 45, 176 A.2d 641 (1962).

It is possible to waive the right to be represented by counsel. *Commonwealth v. Grant,* 229 Pa.Super. 419, 323 A.2d 354 (1974). It is therefore also possible to waive the right to representation by counsel who is unburdened by any conflict of interest. However, in order for a waiver of a constitutional right to be valid, it must be a voluntary and intelligent act of the defendant. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Commonwealth v. Anderson,* 441 Pa. 483, 272 A.2d 877 (1971).

To assure that a waiver is in fact voluntary and intelligent, the trial judge should question the defendant as to his comprehension of the potential harms of dual representation:

> Whenever two or more defendants who have been jointly charged, or whose cases have been consolidated, are represented by the same attorney, the trial judge should inquire into potential conflicts which may jeopardize the right of each defendant to the fidelity of his counsel.

> ABA Project on Standards for Criminal Justice, *Standards Relating to The Function of the Trial Judge* § 3.4(b) (Approved Draft 1972).

The Commentary to these *Standards* suggests that "[a] waiver of the right to separate representation should not be

accepted unless the defendants have each been fully informed of the probable hazards; and the voluntary character of their waiver is apparent." *Id.,* Commentary at 45. Because "the question ultimately is the subjective understanding of the accused, rather than the quality of the explanation given him, the court should question the accused in a manner designed to reveal that understanding, rather than framing questions which call for a simple 'yes', or 'no' response." ABA Project on Minimum Standards for Criminal Justice, *Standards Relating to Providing Defense Services* § 7.2, Commentary at 63 (Approved Draft 1968). Here, the following colloquy occurred:

> THE COURT: Your name is James Allen Burch, and you are Sue Ann Riberdy?
>
> DEFENDANT BURCH: Yes.
>
> DEFENDANT RIBERDY: Yes.
>
> THE COURT: Both willing to have Mr. Myerson represent both of you?
>
> DEFENDANT BURCH: Yes, sir.
>
> DEFENDANT RIBERDY: Yes, sir.
>
> THE COURT: No conflict, no possibility of conflict of interest between you? The interests are not necessarily inconsistent between each other in the charges?
>
> DEFENDANT BURCH: No, sir.
>
> DEFENDANT RIBERDY: No, sir.
>
> THE COURT: All right.
>
> N.T. 3

I submit that this colloquy was plainly inadequate and cannot support the suggestion by the Majority that appellants voluntarily and intelligently waived their right to the effective assistance of counsel. The contents of an adequate colloquy will vary according to the particular circumstances of the case. There may be special factors requiring the judge's attention. For example, it may appear that the district attorney has offered one defendant a plea bargain in return for testimony against the other, or the charges may vary in a manner suggestive of possible conflict, as where one defendant is said to have committed the criminal act,

while the other is said to have acted as a conspirator. In all instances, however, the judge must inform the defendants that each one has a constitutional right to his own attorney. The judge should explain that an attorney's strategy may help one defendant but not necessarily the other, and that even if this does not seem so before trial, something unforeseen may occur during trial that makes it so. The judge should also explain that if one attorney represents both of the defendants, it will not be possible during the trial for one defendant to make a statement to the attorney in the expectation that it will be kept in confidence as regards the other defendant. *See* ABA Project on Standards for Criminal Justice, *Standards Relating to The Prosecution Function and the Defense Function* § 3.5, Commentary at 211–212 (Approved Draft 1971). Finally, the judge should ascertain from the attorney whether he has discussed the potential conflict with the defendants before accepting the dual representation. The questions should disclose whether the attorney knows and has fulfilled his obligation to consider the potential conflicts and to inform his clients of them. "If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues employment. He should resolve all doubts against the propriety of the representation." ABA *Code of Professional Responsibility,* Ethical Considerations 5–15 (Final Draft 1969). "In those instances in which a lawyer is justified in representing two or more clients having differing interests, it is nevertheless essential that each client be given the opportunity to evaluate his need for representation free of any potential conflict and to obtain other counsel if he so desires. Thus before a lawyer may represent multiple clients, he should explain fully to each client the implications of the common representation and should accept or continue employment only if the clients consent. If there are present other circumstances that might cause any of the multiple clients to question the undivided loyalty of the lawyer, he should also advise all of the clients of those

circumstances." (Footnotes omitted) *Id.,* Ethical Considerations 5–16.

2

It may be that in fact appellants understood their position with respect to each other because their attorney did "explain fully to each . . . the implications of the common representation . . .." In that case, there may well have been a voluntary and intelligent waiver. Given the inadequate colloquy, however, we cannot tell. Where ineffectiveness is claimed, and it is not possible to resolve the issue on the record, it is appropriate to remand for an evidentiary hearing. *Commonwealth v. Twiggs,* 460 Pa. 105, 331 A.2d 440 (1975). On remand it must be remembered that a finding of waiver may not be made lightly. *Commonwealth ex rel. McCray v. Rundle,* 415 Pa. 65, 202 A.2d 303 (1964). If after a full evidentiary hearing it is determined that appellants made an effective waiver, then the inquiry is over. If, however, the hearing judge determines that the waiver was not voluntary and intelligent, as to one or both of appellants, then a second inquiry must follow: Was there in fact a conflict of interest due to dual representation at appellants' trial?

The law on conflict of interest was recently summarized in *Commonwealth v. Breaker,* 456 Pa. 341, 318 A.2d 354 (1974), as follows:

First, "[i]f, in the representation of more than one defendant, a conflict of interest arises, the mere existence of such a conflict vitiates the proceedings even though no *actual* harm results. The potentiality that such harm *may* result, rather than that such harm *did* result, furnishes the appropriate criterion [citation omitted]." Second, a defendant must demonstrate that a conflict of interest actually existed at the trial because "dual representation alone does *not* amount to a conflict of interest [citations omitted]." Third, "[t]o make the dual representation arise to a true conflict, appellant need not show that actual harm resulted . . . but must at least show the possibility of harm . . .. [citation omitted]." Fourth, appellant will satisfy the requirement of demonstrating possible

harm if he can show, inter alia, "that he had a defense inconsistent with that advanced by the other client, or that counsel neglected his case in order to give the other client a more spirited defense [citations and footnote omitted]."

*Id.* 456 Pa. at 344, 318 A.2d at 356.

Here, two persons were charged with possession with intent to sell various controlled substances, seized in a search of what was apparently a common residence. Appellants correctly assert that a disclaimer by either appellant as to possession of the controlled substances would necessarily result in a conflict of interest. "How could counsel for Riberdy argue that Burch's conduct at the car wash gave rise to a strong inference that he possessed the items found in the home without seriously prejudicing Burch?" (Appellants' Brief at 16.) [1] The only defense presented at trial was the testimony of a drug expert. It is perfectly conceivable that this defense strategy was advantageous to one of appellants at the expense of the other. Also, the motion to suppress was directed entirely to the events that preceded the search of the house, and to the warrant itself. No contention was made that appellant Riberdy's Fourth Amendment rights, as distinguished from appellant Burch's, had been violated. If there was such a violation, this was prejudicial to appellant Riberdy. However, it is equally conceivable that appellants desired joint representation, and expressed to their attorney an unwillingness to blame each other or to testify on their own behalf. Questions such as these should be examined on remand.

The Majority states that "[i]n order to vitiate the proceedings, a conflict must appear from the facts of the proceedings as they exist on the record." (Majority 248 Pa.Super. at 14, 374 A.2d at 1293) It is true that in order to vitiate prior proceedings, as for example by awarding a new trial, a conflict must appear of record. However, the "record" at issue is not limited to that which we have now; we are not prevented from remanding for an evidentiary hearing when it appears of record that further proceedings are warranted.

1. We have no brief from the Commonwealth.

To be sure, a given case may, on the record, be seen to be frivolous so that no further proceeding is necessary. Or, at the other extreme, a case may, on the record, be seen to demonstrate a conflict so clearly that no further proceeding is necessary. *See Commonwealth v. Burns,* 215 Pa.Super. 333, 257 A.2d 74 (1969), allocatur refused (joint representation; one defendant pleaded guilty and one went to trial; conflict of interest inherent). Usually, however, a further proceeding is necessary. The most frequently encountered case where conflict of interest is alleged to have resulted from dual representation has been on appeal from a denial of PCHA relief, following a hearing. The case cited by the Majority, *Commonwealth v. Smith,* 228 Pa.Super. 256, 323 A.2d 838 (1974), is such a case. In such a case, obviously the appellant is limited to the record made at the hearing. In cases where PCHA relief has been denied without a hearing, remand for further proceedings is common. *Commonwealth v. James,* 429 Pa. 250, 240 A.2d 368 (1968); *Commonwealth v. Robertson,* 211 Pa.Super. 79, 234 A.2d 61 (1967); *Commonwealth v. Brown,* 210 Pa.Super. 136, 232 A.2d 10 (1967).[2]

I would therefore remand for an evidentiary hearing to determine whether there was an effective waiver of the claim that counsel was ineffective because of a conflict of interest arising from dual representation. If the hearing judge determines that the waiver was not voluntary and intelligent, he should proceed to ascertain whether a conflict of interest arose from the dual representation at trial. If he finds a conflict, he should award appellants a new trial. One additional comment appears necessary. On this appeal appellants were again represented by the same attorney. On remand, this attorney should be permitted to represent one of appellants, but not both.

HOFFMAN and CERCONE, JJ., join in this opinion.

**2.** It is true that relief has been denied on direct appeal, where the record was insufficient to support the allegation of conflict, and the defendant has been advised that the denial of relief did not preclude his seeking a PCHA hearing to reveal the alleged conflict. *Commonwealth v. Armbruster,* ʾ225 Pa.Super. 415, 311 A.2d 672 (1973). However, *Armbruster* preceded *Commonwealth v. Twiggs, supra.*