## Commonwealth v. Nation

*Cheryl A. Ondechek, assistant district attorney,* for the Commonwealth.

*Lyn R. Baily* and *D. Lynne Ferguson,* for defendant.

ECKMAN, *P.J.,* September 4, 1990 — Presently before the court are post-verdict motions in arrest of judgment and for a new trial filed by defendant, Daniel Nation.

Defendant was charged with possession with intent to deliver cocaine in violation of the Controlled Substance, Drug, Device and Cosmetic Act[1] on August 14, 1989. On December 28, 1989, defendant filed an omnibus pretrial motion in the nature of a motion to suppress physical evidence seized from his residence on August 3, 1989, pursuant to a search warrant.

An evidentiary hearing on the motion to suppress was held on January 9, 1990. The omnibus pretrial motion was dismissed on January 10, 1990, and defendant proceeded to a nonjury trial that same day. By stipulation of the parties, the evidence from the suppression hearing was incorporated by reference as part of the trial testimony and supplemented by additional testimony. Defendant was found guilty of possession with intent to deliver cocaine on January 11, 1990.

Defendant timely filed the instant motions on January 18, 1990. The parties having waived oral argument before the court en banc and briefs having been submitted, the motions are ready for disposition.

Defendant contends that the court erred in failing to suppress physical evidence seized from his resi-

---

1. Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, no. 64, §1, as amended; 35 P.S. §780-113(a)(30).

dence pursuant to a search warrant issued and executed on August 3, 1989, because it was the fruit of a prior allegedly illegal search warrant for his residence issued and executed earlier that same day. Defendant contends that the initial search warrant was illegal because (I) it was not issued for a lawful purpose; and (II) the accompanying affidavit of probable cause fails to provide a basis to believe the evidence sought was located at the premises named in the warrant. All other issues are deemed waived or abandoned. *Commonwealth v. Manigault,* 501 Pa. 506, 462 A.2d 239 (1983); Lancaster County Rule of Criminal Procedure 31D.

Initially, we note that defendant's brief frequently cites evidence which is not a part of the suppression record in this case and must be disregarded in our discussion and analysis of the issues preserved for review.

A review of the evidence adduced at the suppression hearing reveals that during late July or early August 1989, Officer Donald Metzger of the East Hempfield Township Police Department received information from an unidentified tenant at the Covered Bridge Apartments, East Hempfield Township, Lancaster County, Pennsylvania, that an individual known to the tenant as Herbert Curtis was living in the apartment complex and was wanted by law enforcement authorities in the State of Maryland on a charge of murder. Officer Metzger contacted the management of the Covered Bridge Apartments and obtained a birth date for the individual known as Herbert Curtis from a lease agreement.

Officer Metzger made a computer check for any outstanding warrants issued for Herbert Curtis but did not find any warrants under that name. Officer Metzger again spoke to the unidentified tenant at the Covered Bridge Apartments and received informa-

tion that the person known as Herbert Curtis may also be known by the surname Brown. Officer Metzger made a second computer check for warrants issued for persons with the surname Brown and with the same date of birth as the individual known as Herbert Curtis. The computer search revealed that Daniel Brown, having the same date of birth as Herbert Curtis, was wanted by law enforcement authorities in the State of Maryland for violation of parole on a conviction of second-degree murder.

On August 1, 1989, Officer Metzger telephoned Trooper First Class J.J. Johnson of the Maryland State Police, Fugitive Unit. Trooper Johnson transmitted by facsimile machine a copy of a photograph and fingerprints of the person known in Maryland as Daniel Brown and a list of aliases used by that person. The facsimile copy of the photograph and fingerprints were not usable due to deterioration of the image in the transmission. Officer Metzger also obtained a copy of a photograph and a set of fingerprints from the Lancaster City Bureau of Police for an individual listed in their files as Daniel Brown. Officer Metzger learned that this individual had recently legally changed his name to Daniel Nation.

On August 2, 1989, at approximately 5:14 p.m., Officer Metzger and Detective Jan Walters of the Lancaster County Drug Task Force set up surveillance outside the residence of the person known as Herbert Curtis, N-2056 Swarr Run Road, Covered Bridge Apartments, East Hempfield Township, Lancaster County, Pa. Defendant arrived at that address and the officers approached him based on similarities between his physical appearance and the person pictured in the photograph of Daniel Brown or Daniel Nation from the files of the Lancaster City

Bureau of Police. The officers told defendant that they believed he was wanted as a fugitive from justice in the State of Maryland and thereafter took defendant into custody and transported him to the East Hempfield Township Police Station. While in custody at the East Hempfield Township Police Station, defendant admitted to being Daniel Nation but did not admit that he had been convicted of second-degree murder in the State of Maryland.

On August 3, 1989, at approximately 2:30 p.m., Officer Metzger obtained search warrant No. F 20921 from District Justice Richard A. Sheetz to search defendant's apartment for:

"Any documentation that tends to affirm the identity of Daniel Brown, also known as Daniel Nation, Daniel Sundel Nation, Gerald Sherrod, Herbert Curtis. Any documentation that tends to show the movements of the above subject while wanted on warrants by the State of Maryland."

The affidavit of probable cause for the warrant reads as follows:

"(1) That Daniel Brown also known as Daniel Nation, Daniel Sundel Nation, Gerald Sherrod, Herbert Curtis is wanted by the State of Maryland for Parole Violation and is wanted on a bail forfeture [sic] for failing to appear on charges in the State of Maryland. Daniel Brown has an extensive criminal histor [sic] that included a conviction for 2nd degree Murder and violations of the Maryland drug laws. Daniel Brown has been wanted by the State of Maryland on warrant(s) since Feb., 1989. An investigation by the East Hempfield Twp. Police Dept. revealed that Daniel Brown was living at N-2056 Swarr Run Rd., East Hempfield Twp. a unit of the Covered Bridge Apt. complex. Brown rented the Apt. using the name, Herbert Curtis, he indicated that he would reside there with a Terry Cohen, to

date nothing is known about Terry Cohen. Daniel Brown was arrested by the affiant and others on 2 Aug., 1989 as he arrived in a vehicle at the Hempfield Twp. Apt. At the time of the arrest Brown had identification in the name, Herbert Curtis.

"(2) Although Brown has admitted his name, and is charged with Fugative [sic] from Justice, it is felet [sic] that additional documentation as to his variety of names, and his movements will assist in determining his intent as a fugitive and the extent that he went to remain so."

The search warrant was executed on August 3, 1989, at approximately 2:45 p.m., at N-2056 Swarr Run Road, East Hempfield Township, Lancaster County, Pa. In the course of executing the search warrant and seizing personal papers and documents containing the names Daniel Brown, Daniel Nation and Herbert Curtis, a large quantity of drug manufacturing and distribution paraphernalia was observed. The search was immediately stopped in order to obtain a second search warrant to search for evidence of drug manufacturing and sales.

On August 3, 1989, at approximately 4 p.m., Officer Metzger obtained a second search warrant, no. F 20923, from District Justice Richard A. Sheetz to search defendant's apartment for controlled substances and drug paraphernalia. The second search warrant was executed on August 3, 1989, at approximately 4:23 p.m., at N-2056 Swarr Run Road, East Hempfield Township, Lancaster County, Pennsylvania. During the execution of the second search warrant, approximately 254 grams of suspected cocaine were seized as well as approximately $108,934 in United States currency, $100 in counterfeit United States currency, a .25-caliber handgun and a substantial quantity of drug paraphernalia. Thereaf-

ter, defendant was charged with possession with intent to deliver cocaine on August 14, 1989.

## I

Defendant contends that all of the evidence seized pursuant to the second search warrant, no. F 20923, should have been suppressed because the probable cause for that warrant was based on evidence and information obtained pursuant to the prior allegedly illegal search warrant, no. F 20921. Defendant contends that warrant no. F 20921 was illegal because ''evidence that a person is a fugitive from justice as a parole violator is not evidence of a crime, and therefore not legally pursuable through a search warrant. A search warrant issued for such evidence is illegal.'' (Brief for defendant, at 15.)

When determining whether a motion to suppress was properly dismissed, the reviewing court must:

''[D]etermine whether the evidence supports the court's factual findings and whether the legal conclusions drawn from those findings were legitimate. This determination is made considering only the evidence of the prosecution's witnesses and so much of the defense evidence as, fairly read in the context of the record as a whole, remains uncontradicted. Findings supported by the record and legitimate legal conclusions drawn therefrom will not be disturbed.'' *Commonwealth v. Rodriguez,* 330 Pa. Super. 295, 298, 479 A.2d 558, 560 (1984) (citations omitted); *Commonwealth v. Williams,* 317 Pa. Super. 456, 463-4, 464 A.2d 411, 414 (1983).

The purposes for which a search warrant may be issued are controlled by Pa.R.Crim.P. 2002, 42 Pa.C.S.

''Rule 2002. *Purpose of Warrant*

''A search warrant may be issued to search for and to seize:

"(a) contraband, the fruits of crime, or things otherwise criminally possessed, or

"(b) property which is or has been used as the means of committing a criminal offense; or

"(c) property which constitutes evidence of the commission of a criminal offense." Pa.R.Crim.P. 2002.

Whether documents relevant to the true identity and aliases employed by an individual arrested on an extradition warrant as a fugitive from justice constitutes "evidence of the commission of a criminal offense" appears to be an issue of first impression in this Commonwealth. Our research fails to provide any authority on this specific issue but does, however, reveal certain salient principles applicable to this case.

Pursuant to the Uniform Criminal Extradition Act,[2] police officers executing a governor's warrant are given the limited authority to conduct an investigation for the purpose of "identifying the person held as the person charged with the crime." 42 Pa.C.S. §9141.[3] This purpose is consistent with the Commonwealth's burden in an extradition hearing to prove by a preponderance of the evidence that the person arrested is the person named in the extradi-

2. Act of July 9, 1976, P.L. 586, no. 142, §2, 42 Pa.C.S. §9121 et seq.

3. By application of the same section of the Extradition Act, the Commonwealth cannot justify the issuance of a search warrant as part of an independent investigation, complementing the investigation by Maryland authorities, of the crime underlying the extradition proceeding. Under 42 Pa.C.S. §9141, the governor is prohibited from inquiring into "the guilt or innocence of the accused of the crime of which he is charged." Therefore, we reject the Commonwealth's argument that *United States v. Savoca,* 761 F.2d 292 (6th Cir. 1985) (search warrant issued by federal authorities for evidence of fictitious identification employed by bank robbery defendants) in any way justifies the warrant in this case.

tion papers. *Commonwealth ex rel. Lattimore v. Gedney,* 240 Pa. Super. 226, 363 A.2d 786 (1976). In order to meet this burden, the Commonwealth must be accorded the opportunity to conduct an investigation designed to uncover the true identity of an arrestee living in the asylum state under an alias or, as in the instant case, numerous aliases. Therefore, we have little trouble in finding that the police were justified in engaging in the type of investigation conducted in the present case. The disputed issue herein is the means used to investigate.

A search warrant issued in accordance with constitutional requirements and the Pennsylvania Rules of Criminal Procedure is one means by which this investigation can be conducted. It is undisputed by the parties that the search warrant was not issued for the purposes listed at Pa.R.Crim.P., rule 2002, subsections (a) or (b). Defendant alleges, however, that the warrant does not comport with rule 2002(c)'s requirement that it be issued for and to seize property which constitutes evidence of the commission of a criminal offense. However, upon careful consideration of the act, it becomes apparent that evidence relevant to the true identity and aliases employed by a fugitive from justice is evidence of the commission of a criminal offense *by this particular person.*

In defining the form of demand necessary for the issuance of an extradition warrant, the act states, inter alia: 

"No demand for the extradition of a person charged with a crime in another state shall be recognized by the governor unless in writing, alleging . . . that the accused was present in the demanding state at the time of the commission of the alleged crime and that thereafter he fled from the state, and accompanied by a copy of an indictment found . . .

together with . . . a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or *broken the terms of bail, probation or parole.* The indictment . . . must substantially charge the person demanded with having committed a crime under the law of that state, and the copy of indictment . . . judgment of conviction or sentence must be authenticated by the executive authority making the demand." 42 Pa.C.S. §9124. (emphasis supplied)

It is evident, therefore, that when extradition proceedings are ostensibly based on a parole violation, the substance of the demand and the crime for which the accused is being extradited is the criminal offense upon which he has been convicted, sentenced and paroled. For purposes of extradition, "a charge of crime is not merged in the conviction and sentence, but the criminal is still charged with the crime until completion of the sentence imposed upon him." *United States ex rel. Faris v. McClain,* 42 F.Supp. 429 (M.D. Pa.) Moreover, there is no basis for distinguishing detainers based on parole violations from those based in criminal prosecutions. *Commonwealth ex rel. Jacobs v. Digiacinto,* 321 Pa. Super. 536, 468 A.2d 1118 (1983).

Instantly, the police officers requested and obtained a search warrant designed to search for and seize evidence that the person arrested was in fact the same individual found guilty of the commission of the crime of second-degree murder in the State of Maryland and a parole violator, as alleged in the form of demand filed pursuant to section 9124 of the act, *supra.*

The evidence sought was obviously not evidence which would serve to prove the corpus delicti of

homicide, because the corpus delicti had previously been proven in the courts of Maryland. The evidence sought is evidence of defendant's identity as the person who committed second-degree murder in Maryland and is a parole violator. Therefore, we are persuaded that the first search warrant, no. F 20921, was issued for a lawful purpose under Pa.R.Crim.P. 2002(c) and that we properly refused to suppress the evidence seized pursuant to the second warrant.

Defendant also argues that the warrant was unlawful because neither being a fugitive from justice nor a parole violator is a crime under the Pennsylvania Crimes Code. Therefore, the evidence sought was not relevant in any way to the commission of a criminal offense. From our discussion, *infra,* and reference to section 9125 of the act, *supra,* it is apparent that the crime for which defendant was being extradited was as a parole violator for second degree murder and that the evidence was relevant to his identity as the person who violated parole after having committed that crime. Therefore, we dismiss defendant's arguments as meritless.

## II

Defendant next contends that the affidavit of probable cause was insufficient to establish probable cause to search defendant's residence in that it failed to provide a substantiated basis to believe the evidence sought was located in defendant's residence. In essence, defendant asserts that the affidavit must contain a statement that an individual stores his or her personal papers and documents in his residence and the issuing magistrate cannot, through the use of common sense, lawfully assume that such papers will be found there.

A search warrant is constitutionally valid if there are sufficient facts set forth in the affidavit to permit

a neutral and detached magistrate to conclude with reasonable certainty that the evidence sought will be found in the place to be searched. *Commonwealth v. Morris,* 265 Pa. Super. 589, 402 A.2d 702 (1979); *Commonwealth v. Smith,* 453 Pa. 326, 309 A.2d 413 (1973).

The issuing authority may not consider any evidence outside the affidavits. Pa.R.Crim.P. 2003(a). However, when testing the sufficiency of an affidavit, the court should consider the affidavit in its entirety, *Commonwealth v. Bable,* 286 Pa. Super. 203, 428 A.2d 643 (1981), and view the information offered to demonstrate probable cause "in a common sense, nontechnical, ungrudging and positive manner." *Commonwealth v. Jones,* 506 Pa. 262, 269, 484 A.2d 1383, 1387 (1984).

"[T]he issuing magistrate is not to be confined by restrictions on the use of his common sense, and his determination of probable cause should be given great deference by the reviewing court." *Commonwealth v. Burch,* 248 Pa. Super. 8, 13, 374 A.2d 1291, 1293 (1977).

See also, *Commonwealth v. Williams,* 236 Pa. Super. 184, 345 A.2d 267 (1975). Doubtful or marginal cases should be resolved in favor of a finding of probable cause. *Commonwealth v. Gannon,* 308 Pa. Super. 330, 454 A.2d 561 (1982); *Commonwealth v. Matthews,* 446 Pa. 65, 285 A.2d 510 (1971).

Based on these principles, and the facts set forth in the affidavit or probable cause, *infra,* which includes a statement that defendant was living at the premises named in the warrant under the fictitious name of Herbert Curtis, we are persuaded that by the use of common sense a neutral and detached magistrate could conclude with reasonable certainty that defendant's personal papers and documentation of his identity and aliases could be found at his

residence. *Commonwealth v. Burch, supra; Commonwealth v. Williams, supra; Commonwealth v. Morris, supra.* Therefore, we dismiss defendant's argument as meritless.

Accordingly, we enter the following

## ORDER

And now, September 4, 1990, for the foregoing reasons, the motions in arrest of judgment and for a new trial filed by defendant, Daniel Nation, are dismissed. Defendant is directed to appear for sentencing at the call of the district attorney.