Commonwealth *v.* Wheeler, Appellant.

Submitted April 29, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*Alan M. Lerner,* and *Cohen, Shapiro, Polisher, Shiekman and Cohen,* for appellant.

*Richard Max Bockol* and *Milton M. Stein,* Assistant District Attorneys, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE JONES, October 12, 1971:

Appellant and a codefendant were charged with murder in 1937; each pled not guilty at their arraignment and separate counsel were appointed. Subsequently both withdrew their pleas of not guilty and

entered guilty pleas to murder generally. A court en banc was convened to determine the degree of guilt and the penalty to be imposed. Each was found guilty of murder in the first degree and life sentences were imposed. That judgment of sentence was never attacked until appellant filed a petition under the provisions of the Post Conviction Hearing Act, Act of January 25, 1966, P. L. (1965) 1580, §1 *et seq.*, 19 P.S. §1180-1 *et seq.* (Supp. 1971). Following an evidentiary hearing, the court below denied relief and this appeal followed.

Although appellant was represented by a different, court-appointed attorney than his codefendant, appellant's principal contention is that the effective assistance of his *actual* counsel was precluded by an impermissible conflict of interest. Alternatively, appellant contends that the representation by his counsel of record was wholly inadequate.

Due to the presence of different counsel, appellant's situation appears, at first glance, to be an unlikely candidate for "dual representation" treatment. When we turn to the record, however, the basis for appellant's argument is obvious: appellant's court-appointed counsel did not utter one word during the degree-of-guilt and sentencing hearing. Indeed, appellant's counsel did not even conduct the direct examination of appellant; every shred of evidence was presented by the codefendant's counsel. Moreover, not until the twenty-second page (the conclusion of the Commonwealth's case) of this thirty-two page record is there any indication that the evidence theretofore received was to be used against someone besides appellant even though codefendant's counsel had single-handedly conducted all cross-examinations. Were it not for the presence of appellant's counsel's name on the cover of the transcript and counsel's petition for payment of counsel fees, there would be absolutely no evidence that appellant had separate counsel.

The explicit assumption of the court below that both counsel collaborated finds no support in the record before us. On these facts we have no recourse but to conclude that codefendant's counsel represented both appellant and his codefendant in a dual capacity. This finding, of course, does not answer the ultimate question whether there was a conflict of interest.

It is axiomatic constitutional law that the Sixth Amendment guarantee of effective assistance of counsel requires, *inter alia*, that an attorney representing multiple defendants not be faced with a conflict of interest. *Glasser v. United States,* 315 U.S. 60 (1942); *Com. ex rel. Whitling v. Russell* 406 Pa. 45, 176 A. 2d 641 (1962). In *Whitling,* we reversed the Superior Court, which had placed the burden on the accused to demonstrate that ineffective representation was a consequence of the conflict of interest, and pertinently stated: "If, in the representation of more than one defendant, a conflict of interest arises, the mere existence of such a conflict vitiates the proceedings, even though no *actual* harm results. The potentiality that such harm *may* result, rather than that such harm *did* result, furnishes the appropriate criterion." 406 Pa. at 48, 176 A. 2d at 643. *See, also, Com. v. Meehan,* 409 Pa. 616, 187 A. 2d 579 (1963); *Com. v. McKnight,* 201 Pa. Superior Ct. 14, 190 A. 2d 363 (1963).

However, to state that the existence of an apparent conflict of interest vitiates the proceedings does not answer the preliminary question whether a conflict of interest did in fact exist at the time of trial. Thus, in *Com. ex rel. Corbin v. Myers,* 419 Pa. 139, 213 A. 2d 356 (1965), *cert. denied,* 386 U.S. 1013 (1967), there was no conflict as each defendant had separate trials, similar exculpatory defenses were advanced and neither testified at the trial of the other. *See, also, Com. ex rel. Bronzell v. Myers,* 205 Pa. Superior Ct. 375, 208

A. 2d 871 (1965). Nor was there a conflict in *Com. ex rel. Gallagher v. Rundle,* 423 Pa. 356, 223 A. 2d 736 (1966), even though codefendants were jointly tried since "each defendant recited a mutually exculpatory alibi which protected his confederate." 423 Pa. at 359, 223 A. 2d at 737. In other cases we found it necessary to remand for an evidentiary hearing. *Com. v. James,* 429 Pa. 250, 240 A. 2d 368 (1968). *See, also, Com. v. Robertson,* 211 Pa. Superior Ct. 79, 234 A. 2d 61 (1967); *Com. v. Brown,* 210 Pa. Superior Ct. 136, 232 A. 2d 10 (1967). From these cases we were able to articulate the rule in *Com. v. Wilson,* 429 Pa. 458, 463, 240 A. 2d 498, 501 (1968), that, "dual representation alone does *not* amount to a conflict of interest." *Accord, Com. v. Williams,* 435 Pa. 550, 257 A. 2d 544 (1969); *Com. v. Resinger,* 432 Pa. 398, 248 A. 2d 55 (1968). As evidenced by our equal division in *Com. v. Small,* 434 Pa. 497, 254 A. 2d 509 (1969), it is often difficult to decide whether an impermissible conflict existed.[1] *See, generally,* Annot., 34 A.L.R. 3d 470 (1970). Lastly, we note that a conflict of interest may affect the sentence alone. *See, Com. v. Cox,* 441 Pa. 64, 270 A. 2d 207 (1970); *Com. v. Lewis,* 217 Pa. Superior Ct. 421, 274 A. 2d 544 (1970). *Cf., Com. v. Cullen,* 216 Pa. Superior Ct. 23, 260 A. 2d 818 (1969).

Based on appellant's confession, it was the Commonwealth's theory that appellant's codefendant was breaking into a lunch stand while appellant served as a lookout. The victim entered this scene and grabbed

---

[1] Perhaps the most difficult situation involves codefendants represented by one attorney who plead differently. *Compare, Com. v. Lewis,* 217 Pa. Superior Ct. 421, 274 A. 2d 544 (1970); *Com. v. Bostick,* 215 Pa. Superior Ct. 488, 258 A. 2d 872 (1969); *Com. v. Burns,* 215 Pa. Superior Ct. 333, 257 A. 2d 74 (1969); *Com. v. White,* 214 Pa. Superior Ct. 264, 252 A. 2d 204 (1969); *Com. ex rel. Gass v. Maroney,* 208 Pa. Superior Ct. 172, 220 A. 2d 405 (1966); *with Com. v. Werner,* 217 Pa. Superior Ct. 49, 268 A. 2d 195 (1970).

appellant, intending to turn him over to the police. The codefendant handed a hammer to appellant and he struck the fatal blow.

At the time of the degree-of-guilt hearing, the codefendant was at least thirty-seven years of age,[2] a loner and apparently had a substantial record. In contrast, appellant, nineteen years of age, had a paralyzed left arm and his prior record consisted of two charges of petty pilfering. Indeed, appellant's defense was certainly not aided by counsel's question, "[y]ou have been doing this petty pilfering for some little time with [the codefendant], haven't you?" By incriminating himself as the actual wielder of the murder weapon, appellant removed much of the onus from his codefendant. Certainly this mitigating factor, which perhaps spared the codefendant from the death sentence due to his much more unfavorable background, hinged entirely upon appellant's testimony. It is futile to hypothesize whether appellant, who testified before his codefendant, would have pled guilty and exonerated his codefendant from the fatal act if appellant had not been actually represented by codefendant's counsel. We are of the opinion that a conflict of interest did exist and that there is a very real possibility that counsel may have neglected appellant's case in order to give the codefendant a more spirited defense. *See, Com. v. Wilson,* 429 Pa. 458, 463, 240 A. 2d 498, 501 (1968).

Order reversed.

Mr. Chief Justice BELL dissents.

---

[2] One of the judges informed the codefendant that, "[y]ou have been thirty-seven every time you were arrested, for the last five years."