Commonwealth *v.* Breaker, Appellant.

342

Submitted January 11, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Francis S. Wright,* Assistant Defender, and *Vincent J. Ziccardi,* Defender, for appellant.

*Milton M. Stein, Robert Lawler, Michael J. Stiles* and *James T. Ranney,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, March 25, 1974:

Since at least *Powell v. Alabama,* 287 U.S. 45, 53 S. Ct. 55 (1932), an essential element of the Sixth Amendment's right to counsel has been the right to "effective assistance of counsel." See *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967). Inherent in the right to effective assistance of counsel is the correlative right to be represented by counsel unburdened by any conflict of interest. *Glasser v. United States,* 315 U.S. 60, 62 S. Ct. 457 (1942); *Commonwealth ex rel. Whitling v. Russell,* 406 Pa. 45, 176 A.2d 641 (1962). We hold that appellant has established a conflict of interest by demonstrating "the possibility of harm" arising from dual representation when his plea was entered. *Commonwealth v. Wheeler,* 444 Pa. 164, 281 A.2d 846 (1971); *Commonwealth v. Wilson,* 429 Pa. 458, 463, 240 A.2d 498, 501 (1968). Therefore, appellant's conviction is reversed, *Whitling,* supra, and a new trial granted.

Appellant William Breaker on July 20, 1959, entered pleas of guilty to the crimes charged in several indictments. He was sentenced to serve five to twenty years in prison for the crimes charged in a single indictment, with sentences suspended on all other indictments. No direct appeal was taken. On July 28, 1970, appellant filed a petition pursuant to the Post Conviction Hearing Act. Act of January 25, 1966, P.L. (1965) 1580, §§ 1-14, 19 P.S. §§ 1180-1 to -14 (Supp. 1973). Evidentiary hearings were held in Oc-

tober and November, 1970; on January 11, 1971, by opinion and order the PCHA court denied all relief requested. This order was appealed.

The Superior Court remanded the case to the trial court for resentencing because the record established that appellant's counsel was burdened by a conflict of interest at sentencing. The trial court reimposed the identical sentence of five to twenty years imprisonment. The Superior Court then affirmed by an opinionless per curiam order. *Commonwealth v. Breaker,* 220 Pa. Superior Ct. 736, 286 A.2d 413 (1971). We granted appellant's petition for allowance of appeal.[1] We reverse.

One Frank Mangold was the finger man in this case. While committing a burglary, he was apprehended by the police and upon interrogation confessed to several other burglaries. In hopes of receiving favorable treatment from the Commonwealth, Mangold incriminated other men. As the arresting detective testified in the 1959 trial, "Additional information was received about the other defendants from Mangold, and the arrests came as a result of the information." One of those implicated and arrested was appellant.

Several months later appellant, Mangold, and nine other defendants were called for trial. Although every other defendant was represented by counsel, and Mangold by a privately-retained attorney, when appellant entered the courtroom he was unrepresented. At that time Mangold's attorney volunteered to the court that he would act as appellant's counsel. Immediately thereafter, appellant pleaded guilty to the crimes charged in six indictments.

Our dual representation cases make several principles clear. First, "[i]f, in the representation of more than one defendant, a conflict of interest arises, the mere existence of such conflict vitiates the proceed-

---

[1] Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, art. II, §204(a), 17 P.S. §211.204(a) (Supp. 1973).

ings, even though no *actual* harm results. The potentiality that such harm *may* result, rather than that such harm *did* result, furnishes the appropriate criterion." *Commonwealth ex rel. Whitling v. Russell,* 406 Pa. 45, 48, 176 A.2d 641, 643 (1962). Second, a defendant must demonstrate that a conflict of interest actually existed at trial, because "dual representation alone does *not* amount to a conflict of interest." *Commonwealth v. Wilson,* 429 Pa. 458, 463, 240 A.2d 498, 501 (1968); *Commonwealth ex rel. Corbin v. Myers,* 419 Pa. 139, 213 A.2d 356 (1965), cert. denied, 386 U.S. 1013, 87 S. Ct. 1361 (1967). Third, "[t]o make the dual representation rise to a true conflict, appellant need not show that actual harm resulted, . . . but must at least show the possibility of harm . . . ." *Commonwealth v. Wilson,* supra at 463, 240 A.2d at 501. Fourth, appellant will satisfy the requirement of demonstrating possible harm, if he can show, inter alia, "that he had a defense inconsistent with that advanced by the other client, or that counsel neglected his case in order to give the other client a more spirited defense." Id. Accord, *Commonwealth v. Cox,* 441 Pa. 64, 69, 270 A.2d 207, 209 (1970) (plurality opinion).[2]

Appellant has amply demonstrated the possibility of harm resulting from being jointly represented by his accuser's counsel.[3] "The right to have the assistance

---

[2] The two examples given in *Wilson* and *Cox,* namely, substantial inconsistent defense and counsel's neglect, are exactly that— examples of possible harm.

[3] An analogous case was presented in *Commonwealth v. Small,* 434 Pa. 497, 254 A.2d 509 (1969) (judgment of sentence affirmed by equally divided court). There, one of appellant's codefendants implicated appellant by a statement given the police. Both men were represented by the same attorney at trial. It was the opinion of Mr. Justice EAGEN, Mr. Justice O'BRIEN, and this writer that "once codefendant in any way implicates appellant, appellant's defense strategy necessarily becomes tied to and is limited by that of codefendant. In order for joint counsel to ably represent his 'impli-

of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Glasser v. United States,* 315 U.S. 60, 76, 62 S. Ct. 457, 467 (1942). In the present case, the attorney by his representation of Mangold compromised his ability to advise appellant disinterestedly. Such representation of appellant may very well have been tainted by the attorney's desire to obtain the best treatment possible for appellant's accuser, Mangold.

Moreover, the facts of the instant case fall within one of the *Wilson-Cox* examples. Counsel, by his representation of both appellant and appellant's accuser, was in a position where it was virtually impossible to avoid "neglect[ing] [appellant's] case in order to give the other client a more spirited defense." *Commonwealth v. Wilson,* supra at 463, 240 A.2d at 501. The record reveals that appellant's entering a plea of guilty was not dictated by the Commonwealth's case against him. In fact, in the absence of a guilty plea the Commonwealth's case was not very strong.[4] That appellant

cating' client, he cannot contemplate a strategy which would include vigorous cross-examination of this client to discredit his testimony or confession. In these cases, in effect, trial counsel is placed in the anomalous posture of being able to help one client only at the expense of the best interests of the other." Id. at 504, 254 A.2d at 511 (Opinion in Opposition to Order) (ROBERTS, J.).

In the instant case there was no other choice open to Mangold's attorney but to advise appellant to plead guilty. Had appellant pleaded not guilty, counsel would then have been confronted with the necessity of cross-examining the "implicating" client, Frank Mangold. By doing so, counsel might well have violated his duty to Mangold.

[4] The only other evidence against appellant that the record suggests is the existence of an incriminating statement made by appellant. The sole reference to this statement is in the testimony of a police detective. No written statement of appellant was ever produced by the Commonwealth at the PCHA hearing, and there

plead guilty was, however, essential to the trial strategy of appellant's counsel's other client, Frank Mangold.

To build a record of cooperation, Mangold's attorney would necessarily desire as many guilty pleas as possible to be entered. The more guilty pleas induced, the more beneficial would appear Mangold's cooperation, and the more favorable to Mangold would be the Commonwealth's recommendation to the trial court. Indeed, at sentencing the assistant district attorney informed the court that the police had communicated to him that Mangold "was instrumental in the breaking of the case, that he was extremely cooperative with the police and [that the police] wanted the court advised of that fact."[5]

No stage of a trial is more critical than the entry of a guilty plea. At this time, an accused is entitled to representation free of any conflict. Here, appellant was not counseled to plead guilty by an attorney with undivided loyalty. The attorney's primary loyalty was to his initial client, Mangold, and not to appellant, whose case he had seconds before volunteered to take.

_____

is no indication in the record, other than the assertion of the detective, that appellant ever made any statement.

[5] The statement of the assistant district attorney at sentencing demonstrates two things. First, there is no serious question that Mangold broke the case for the Commonwealth. Second, stressing Mangold's role as the informer was in fact the trial strategy decided upon by Mangold's attorney.

It is recognized that the Superior Court previously held that appellant's counsel was burdened by a conflict of interest at sentencing and remanded the case for resentencing. However, on remand appellant was sentenced to a term identical to his original one, despite his having spent more than twelve years in prison. Query, was the resentencing merely pro forma? See ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Sentencing Alternatives & Procedures, §§ 2.1(d) & commentary at 56-61, 2.2, 3.8 (Approved Draft, 1968). See also ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 8.2 (Approved Draft, 1972).

Mangold's attorney fulfilled his obligation to his original client by vividly depicting Mangold's cooperation.

Whether the trial attorney in fact advised appellant to plead guilty in order to stress Mangold's cooperation is immaterial, since from the facts of this case there is a real possibility that counsel's advice resulted from loyalty to Mangold, not appellant. This "possibility of harm" is all appellant need show to justify the award of a new trial.

Our "possibility of harm" standard encompasses the American Bar Association's Code of Professional Responsibility (Code). Ethical Consideration 5-15 of the Code provides: "If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation."[6]

Like our "possibility of harm" standard, the Code directs the attorney "to resolve all doubts against the propriety of" representing "potentially differing interests."[7] Our Court will be satisfied with no less.

Attorneys are further instructed by the Code that "before a lawyer may represent multiple clients, he

---

[6] ABA Code of Professional Responsibility EC 5-15 (1969). The Code establishes the "standards of conduct for attorneys of the court." Pa. R.C.P. 205; see 438 Pa. xxv-cxvi (1970). The Code is in many respects a restatement of the American Bar Association's Canons of Professional Ethics, adopted in 1908 and effective at the time of appellant's trial. Ethical Considerations 5-14 to 5-17 are in substantial part based on canon 6 of the Canons of Professional Ethics. See *Glasser v. United States*, 315 U.S. 60, 62 S. Ct. 457 (1942).

[7] The Code of Professional Responsibility defines differing interests as interests which are "conflicting, inconsistent, diverse, or otherwise discordant." ABA Code of Professional Responsibility EC-14 (1969) (footnote omitted).

should explain fully to each client the implications of the common representation and should accept or continue employment only if the clients consent." ABA Code of Professional Responsibility EC 5-16 (footnote omitted).[8] See id. DR 5-105.[9] Here, the record fails to indicate that appellant had any say in the selection of an attorney or any opportunity to evaluate for himself whether Mangold's attorney would represent him with undivided loyalty.[10]

---

[8] "At the earliest feasible opportunity defense counsel should disclose to the defendant any interest in or connection with the case or any other matter that might be relevant to the defendant's selection of a lawyer to represent him." ABA Project on Standards for Criminal Justice, Standards Relating to the Defense Function § 3.5(a) (Approved Draft, 1971). See also id., commentary at 211-14.

[9] Disciplinary Rule 5-105 of the Code of Professional Responsibility provides:

"(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105(C).

"(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5-105(C).

"(C) In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

"(D) If a lawyer is required to decline employment or to withdraw from employment under DR 5-105, no partner or associate of his or his firm may accept or continue such employment." (footnote omitted).

[10] "In those instances in which a lawyer is justified in representing two or more clients having differing interests, it is never-

The Code states that "[t]ypically recurring situations involving potentially differing interests are those in which a lawyer is asked to represent co-defendants in criminal cases . . . ." Id. EC 5-17. The same fear that the quality of justice will be diminished if a single attorney represents more than one criminal defendant is found in the American Bar Association's Project on Standards for Criminal Justice.

"The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation." ABA Project on Standards for Criminal Justice, Standards Relating to the Defense Function § 3.5(b) (Approved Draft, 1971). See also id., commentary at 213-14.

In the instant case appellant walked into the courtroom unrepresented. Mangold's attorney volunteered to defend him,[11] and short minutes later appellant plead-

---

theless essential that each client be given the opportunity to evaluate his need for representation free of any potential conflict and to obtain other counsel if he so desires." ABA Code of Professional Responsibility EC 5-16 (1969) (footnote omitted). See *Glasser v. United States*, 315 U.S. 60, 75-76, 62 S. Ct. 457, 467 (1942).

[11] When two defendants are represented by a single attorney, the trial court must be especially solicitous of the Sixth Amendment rights of those defendants. Section 3.4(b) of the ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge (Approved Draft, 1972) provides: "Whenever two or more defendants who have been jointly charged, or whose cases have been consolidated, are represented by the same attorney, the trial judge should inquire into potential conflicts which may jeopardize the right of each defendant to the fidelity of his counsel."

The commentary to this section further underlines the apprehension that dual representation of criminal defendants carries with

ed guilty. It is unimaginable that there was a "careful" investigation, that it was "clear" that no conflict would arise,[12] or that appellant gave his "informed" consent. The Code of Professional Responsibility prescribes that an attorney avoid multiple representation if "the chance of adverse effect upon his judgment is not unlikely." ABA Code of Professional Responsibility EC 5-17 (1969). The representation of both Mangold and appellant by Mangold's attorney makes it "not unlikely" that the attorney's judgment was adversely affected.[13]

---

it the hazard of a conflict of interest. "There is much to commend in a practice of requiring that each defendant jointly indicted or to be tried together have separate counsel, because conflict in the interests of the defendants is potentially present. A waiver of the right to separate representation should not be accepted by the court unless the defendants have each been fully informed of the probable hazards; and the voluntary character of their waiver is apparent." Id., commentary at 45.

[12] In fact, a conflict of interest did actually later arise at sentencing. See note 5 supra.

[13] See *Commonwealth v. Geraway*, 301 N.E. 2d 814 (Mass. 1973). There, the Supreme Judicial Court of Massachusetts granted the defendant a new trial because a law "firm considered as a single entity was involved in a serious conflict of interest. . . ." 301 N.E. 2d at 817. Defendant was represented by a member of the same firm which represented four of the eight key prosecution witnesses in a number of civil and criminal matters both in the past and at the time of trial. Moreover, the firm had previously represented another prosecution witness who was under suspicion for the same crime for which the defendant was convicted. Faced with these facts, the Massachusetts court concluded that "the situation was replete with potential constraints, both ethical and economic, on the firm's representation of the defendant." 301 N.E. 2d at 817.

The instant case presents far greater constraints on the attorney's representation of appellant. He alone represented both appellant and Mangold. There was not the attenuation caused by another member of a law firm defending appellant while the attorney argued Mangold's case. Mangold implicated appellant; he was the accuser, not simply one of several prosecution witnesses.

Appellant has more than shown the possibility of harm arising from the dual representation in this case. Accordingly, an actual conflict has been demonstrated and the prophylactic rule of *Commonwealth ex rel. Whitling v. Russell,* 406 Pa. 45, 176 A.2d 641 (1962), controls. See *Commonwealth v. Wilson,* 429 Pa. 458, 240 A.2d 498 (1968).

The order of the Superior Court is reversed. The judgment of sentence of the Court of Common Pleas of Philadelphia is reversed, and appellant is granted a new trial.

Mr. Justice EAGEN concurs in the result.

---

And the dual representation occurred in the same trial and that trial was a criminal one.

---

DISSENTING OPINION BY MR. JUSTICE NIX:

I dissent. The duty of courts to assure full enjoyment of constitutional rights should not be confused with the conjuring of imaginary demons which serve only to impede law enforcement and frustrate justice. The majority opinion has engaged in speculation and fantasy to justify the overturning of a number of guilty pleas, to serious offenses, entered over fourteen and a half-years ago, and places upon the State the impossible duty of attempting at this late date to obtain convictions.

Every citizen of this nation is entitled to the effective assistance of counsel, and this Court has been scrupulous in its efforts to assure effective representation to all criminal defendants who appear before the courts of this Commonwealth. In a series of carefully considered opinions we have properly concluded that there was no necessity, in protecting the right to counsel, to embrace a prophylactic rule prohibiting dual representation. *Commonwealth v. Cox,* 441 Pa. 64, 270 A.2d 207 (1970) ; *Commonwealth v. Wilson,* 429 Pa. 458, 463,

240 A.2d 498, 501 (1968) ; *Commonwealth ex rel. Corbin v. Myers*, 419 Pa. 139, 213 A.2d 356 (1965), *cert. denied*, 386 U.S. 1013 (1967). The increasing cost of legal representation; the limited availability of highly trained and experienced trial counsel in the field; and the numerous examples where the highest quality of representation has been provided by counsel representing co-defendants have forced the conclusion that such a rule would not only be unwise but also clearly unnecessary.[1]

All defendants in this Commonwealth are entitled to relief if they can establish from the record that they have received ineffective assistance of counsel. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). The defendant who was represented by counsel who also represented other clients in the same cause receives additional protection by being permitted to establish his right to relief by demonstrating the mere existence of conflict. *Commonwealth ex rel. Whitling v. Russell*, 406 Pa. 45, 176 A.2d 641 (1962). He is relieved of any obligation to show actual harm, for the law reasons that the potentiality that harm may result is sufficient to grant relief. *Commonwealth v. Cox, supra, Commonwealth v. Wilson, supra*. It is nevertheless still the defendant's obligation to establish the existence of conflict. Ignoring this requirement, as the majority has today, results in granting relief solely because of the dual representation.

There is not a scintilla of evidence upon this record that would justify a finding of the existence of conflict. We have held that a conflict may be established where it is shown that the accused had a defense inconsistent with that advanced by the other client or

---

[1] The general rule throughout most jurisdictions is that representation by one attorney for two defendants is not improper unless the interests of each are shown to be in conflict. See cases cited, 21 Am. Jur. 2d Criminal Law §319 (1965).

clients or where counsel has been shown to neglect the case of the accused in order to give another client more spirited representation. *Commonwealth v. Cox, supra, Commonwealth v. Wilson, supra.* The majority, while giving lip service to these requirements, attempts to dilute their thrust by suggesting that these are only examples of conflict (the use of "inter alia") and further suggests that there are other bases upon which we can predicate a finding of conflict. A review of the factual situation presented and an analysis of the opinion fails to reveal an additional test. Further, it unquestionably establishes the failure of the defendant to meet the enumerated requirements. I can only conclude that the allusion to another basis for finding existence of conflict was simply the fact of dual representation.

The majority rests heavily upon the fact that Mangold was the "finger man", suggesting that this is the basis for finding that his position was antagonistic to that of the appellant and presumably all of the other co-defendants. The record is devoid of any indication that he in any way specifically implicated this appellant. It also reveals that a number of the defendants after being apprehended, including the appellant, admitted their complicity in the crimes charged. The majority is laboring under the unwarranted assumption that if in fact a conflict existed at the investigatory stage, it necessarily persisted and still existed at the time of the guilty plea hearing.

The majority makes much ado that this unrepresented defendant (appellant) entered a guilty plea but fails to note that in addition to Mangold and appellant, five of the other co-defendants also entered guilty pleas.[2]

---

[2] Additionally, on each of the bills of indictment to which appellant entered a guilty plea, the co-defendants on those bills also plead guilty.

The majority assumes that where counsel is representing two defendants, each of whom are entering guilty pleas, that counsel's advice to one must have necessarily been motivated by intent to aid the other. From this record, however, there is nothing to suggest this to be a fact. As a result of the entry of his plea, a number of the charges against appellant were dropped. This obviously was not a benefit to Mangold, but a benefit to appellant.[3]

The majority makes a bold assertion that counsel by his representation of Mangold compromised his ability to advise appellant disinterestedly, but offers no basis for this clairvoyant observation. The majority states as an uncontroverted fact that counsel by his representation of Mangold and appellant was in a position where it was virtually impossible "to avoid neglecting appellant's case". Again this is a conclusion completely devoid of support in the record.

The majority concludes that the case against the appellant was not "very strong". There is absolutely no showing as to what evidence the Commonwealth at that time would have been in a position to present had appellant elected to force the Commonwealth to its proof. The attempt to equate the evidence produced by the Commonwealth during the guilty plea hearing of a number of defendants to what the Commonwealth could have amassed against a particular defendant in a trial is completely unwarranted.

The majority does not contend, nor is there any evidence to support a finding either that appellant had a defense inconsistent with that advanced by the other client, nor can they support in the record any indication that counsel neglected the case of the appellant to provide a more spirited defense for Mangold. While

---

[3] It must be emphasized that we are not here concerned with conflict at the time of sentencing, but only at the entry of the plea.

we will presume prejudice from the existence of a conflict, today's decision has unfortunately fantasized prejudice solely from the fact of dual representation.

Mr. Chief Justice JONES and Mr. Justice POMEROY join in this dissenting opinion.