414 A.2d 1003

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Robert Louis JOYNER, Appellant.**

Supreme Court of Pennsylvania.

Argued March 3, 1980.

Decided May 2, 1980.

John H. Corbett, Jr., Asst. Public Defender, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy Dist. Atty., Kemal Alexander Mericli, Kathryn L. Simpson, Asst. Dist. Attys., Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

Appellant, Robert Louis Joyner, and his co-defendant, Andre Shaw, were charged with criminal attempt and possession of implements for escape. While his co-defendant was acquitted, appellant was found guilty by a jury on both charges. The Superior Court affirmed the convictions per curiam. We granted appellant's petition for allowance of appeal and we affirm.

Initially, appellant contends the evidence was insufficient to sustain the convictions. We must review the evidence in a light most favorable to the verdict winner, in

this case, the Commonwealth. To find the evidence is insufficient it must be determined that accepting as true all of the evidence and all reasonable inferences therefrom, upon which, if believed, the jury could properly have based its verdict, it would be nonetheless insufficient in law to prove beyond a reasonable doubt that appellant is guilty of the crimes of which he has been convicted. Evidence may still be found sufficient even though it be wholly circumstantial. *Commonwealth v. Holzer*, 480 Pa. 93, 389 A.2d 101 (1978).

A review of the evidence at trial, read in the light most favorable to the Commonwealth, reveals the following. The Captain of the Guard at the State Correctional Institution at Pittsburgh observed co-defendant Shaw at the door of his cell and shortly thereafter on his bed. On further inspection, the guard observed a hole in the ceiling and an alteration of the light fixture. Then three persons with ski masks emerged from under the bed and ran out of the cell. A resident wearing a brown ski mask was seen running into cell M–4 and five minutes later guards brought appellant out of that cell. One of the guards testified that when he entered the cell he saw appellant sitting on a mattress breathing heavily and found the brown mask on a shelf in a cabinet in the cell. This guard further testified that appellant was the only inmate in the cell at this time.

Shaw's cell showed signs of an attempt to knock a hole through the concrete ceiling with the aid of an electric drill. Witnesses told of seeing about 35 drill holes in the ceiling, a "hole" measuring about 8 inches × 18 inches, bits of concrete on the floor, the cell furniture in disarray, mirrors fastened to sticks, a pair of pliers, and the ceiling light fixture loosened and moved from its original location. The ¼″ electric drill and bit were found on top of the light fixture. The three men who rushed out of Shaw's cell wore ski masks apparently made from sweater sleeves and the Guard Captain said they were golden or brown in color. The Commonwealth produced a brown mask as its Exhibit No. 6 and witnesses identified it as the one found in appellant's

cell. Appellant did not testify on his own behalf nor did he present any witnesses.

We agree there was sufficient evidence to warrant the convictions.

■ Appellant's second allegation of error is that he was denied effective assistance of counsel due to a conflict resulting from dual representation at the trial of co-defendant Shaw and appellant by the same attorney. The mere existence of a conflict of interest vitiates the proceedings, but appellant has the burden of demonstrating that a conflict of interest actually did exist. Dual representation alone does not amount to a conflict of interest. Appellant need not show that actual harm resulted, but he must at least show the possibility of harm. *Commonwealth v. Breaker*, 456 Pa. 341, 318 A.2d 354 (1974).

At trial, co-defendant Shaw took the stand in his own defense, denying any involvement in the escape attempt and any knowledge about the tools found in his cell. He also presented an alibi defense. On the other hand, appellant's defense was premised on a challenge to the sufficiency of the evidence.[1] Appellant argues that counsel neglected his defense to give his co-defendant a more spirited defense. After a careful review of the record we conclude this argument is totally without merit.

Appellant also asserts that the discrepancy in the quality of the defenses presented on behalf of these co-defendants constitutes a conflict of interest. While the law does not require appellant to make an affirmative showing of prejudice, it must at least appear from a consideration of the record that a *conflict* in fact existed. Here neither defendant relied on any defense which was at all antagonistic to that of the other. Co-defendant Shaw did take the stand in his own defense but his defense can in no way be said to

1. Counsel actively conducted appellant's defense, having filed motions to suppress, to quash information, and in arrest of judgment or for a new trial; questions for voir dire and points for charge; and engaged in the cross-examination of witnesses.

have been at appellant's expense. The mere fact that defenses vary does not amount to a conflict of interest.[2]

We affirm the Order of the Superior Court of Pennsylvania at No. 78 April Term, 1978, affirming the Judgment of Sentence entered by the Court of Common Pleas of Allegheny County, Criminal Division on July 8, 1977, at No. CC7607124AO.

Judgment of sentence affirmed.

ROBERTS, J., filed a dissenting opinion.

ROBERTS, Justice, dissenting.

There is no evidence in this record of compliance with the safeguards which must be observed when trial counsel represents co-defendants. Accordingly, I must dissent from the majority's conclusion that there was no violation of appellant's constitutional right to effective representation.

While "dual representation alone does *not* amount to a conflict of interest," it is well-settled that "[t]o make the dual representation rise to a true conflict, appellant need not show that actual harm resulted, . . . but he must at least show the possibility of harm . . . . *Commonwealth v. Wilson*, 429 Pa. 458, 463, 240 A.2d 498, 501 (1968); *Commonwealth v. Breaker*, 456 Pa. 341, 318 A.2d 354 (1974) (plurality opinion); see also *United States ex rel. Sullivan v. Cuyler*, 593 F.2d 512 (3d Cir.) (habeas corpus petitioner denied sixth amendment right to counsel because of dual representation), cert. granted, 444 U.S. 823, 100 S.Ct. 44, 62 L.Ed.2d 30 (1979).

**2.** We distinguish *U. S. ex rel. Sullivan v. Cuyler*, 593 F.2d 512, (3d Cir. 1979) from the instant case. In that case, after stating in his opening statement that counsel would offer to produce evidence on defendant's behalf, counsel rested at the close of the Commonwealth's case without presenting said defendant's testimony or other evidence. Counsel testified that this strategy was based, in part, on his reluctance to prematurely disclose the defense of the other two co-defendants. Counsel further testified that he failed to produce a witness who was also a co-defendant because of his duty to protect the co-defendant against possible self-incrimination.

In the present case, appellant merely alleges that the co-representation was prejudicial, but fails to point to any specifics.

In *Commonwealth v. Breaker*, supra, we stated that the "possibility of harm" standard embodies the American Bar Association's Code of Professional Responsibility. Ethical Consideration 5–15 of the Code provides:

> "if a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation."

Ethical Consideration 5–16 provides:

> "[B]efore a lawyer may represent multiple clients, he should explain fully to each client the implications of the common representation and should accept or continue employment only if the clients consent," giving each client "the opportunity to evaluate his need for representation free of any potential conflict."

Similarly, the ABA Project on Standards for Criminal Justice reflects concern for the dangers inherent in dual representation. Section 3.5(b) of the Standards Relating to the Defense Function states that "[t]he potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations, when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation." Section 3.4(b) of the Standards Relating to the Function of the Trial Judge provides that in cases of dual representation, "the trial judge should inquire into potential conflicts which may jeopardize the right of each defendant to the fidelity of his counsel."

Here, when the trial judge asked counsel whether there was a conflict of interest arising from the dual representation, counsel replied:

> "It is my understanding that originally I was under the impression, quite frankly, until about ten minutes ago that

both of my clients were charged with assault by a life prisoner. It turns out that is not the case, and with that in mind, I would think there is no problem."

It is evident from this response that counsel did not "weigh carefully" the possible conflict. Nor did counsel discuss the situation with each defendant, in order to secure their informed consents to his continued representation. Even the trial judge commented on the gravity of the situation:

"This experience will be the occasion for the Court to be more careful in the future, even though it may further prolong our already prolonged and protracted cases, to involve conflict of interest. A representation by Counsel alone is demonstratively insufficient and unreliable."

In these circumstances I cannot agree that appellant was afforded his constitutional right to effective representation. I would reverse and remand for a new trial.