J-S46001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANTHONY JAMES BRIGHTWELL, JR., | |
| Appellant | No. 2679 EDA 2015 |

Appeal from the PCRA Order Entered July 28, 2015
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0000939-2013

BEFORE:  BENDER, P.J.E., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                     **FILED JULY 26, 2016**

Appellant, Anthony James Brightwell, Jr., appeals *pro se* from the post conviction court's July 28, 2015 order denying his first petition filed under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546.  We affirm.

The PCRA court set forth the facts of Appellant's case, as follows:

On January 25, 2013, in the early evening hours, [Appellant] along with his four codefendants, Sergio Droz, Calvin Thompson, Tyrone Palmer and Nafis Janey[,] traveled from the City of Chester, in Delaware County, Pennsylvania, to the Borough of West Chester, in Chester County, Pennsylvania, for the purpose of locating a drug dealer to rob. The five men had discussed this plan to rob a drug dealer amongst themselves before arriving in West Chester and had agreed to commit the robbery together. Mr. Janey supplied the transportation to and from West Chester in the form of a white Nissan Maxima. Mr. Palmer supplied the firepower in the form of two handguns, a Taurus .45 caliber

_____

[*] Retired Senior Judge assigned to the Superior Court.

semi-automatic pistol and a Kel[-T]ec 9 mm. semi[-]automatic pistol, used to facilitate the commission of the robbery.

After arriving in West Chester, the five men proceeded to the Apartments for Modern Living (aka the "Sidetrack Apartments"), located at 201 South Matlack Street, West Chester, Pennsylvania. During a cell phone conversation earlier in the evening, Mr. Droz agreed to meet Jamal Ahmed Scott at the Sidetrack Apartments under the pretense that he wanted to purchase some marijuana from him. Before meeting Mr. Scott, the five men agreed that [Appellant] and Mr. Droz would rob Mr. Scott. Mr. Janey drove [Appellant] and Mr. Droz to the Sidetrack Apartments where he dropped them off, then, along with Mr. Palmer and Mr. Thompson, waited for them to commit the robbery and call for a ride. That evening, at approximately 10:49 p.m., [Appellant] met up with Mr. Scott and entered the front passenger door of the silver Honda Civic that Mr. Scott had driven to the location. Mr. Scott's vehicle then made a left turn onto East Union Street and after traveling a short distance[,] pulled over and stopped. While in Mr. Scott's vehicle, [Appellant] pulled the .45 caliber pistol that Mr. Palmer had supplied, on Mr. Scott. As a result of [Appellant's] displaying the firearm in the Honda, a struggle ensued between Mr. Scott and [Appellant].

During the struggle, [Appellant] discharged one round into the ceiling of the Honda. While this was happening, Mr. Droz was waiting outside the Honda, armed with the 9 mm. pistol Mr. Palmer had supplied him. When Mr. Droz observed the struggle between [Appellant] and Mr. Scott and heard the shot fired within the vehicle, he walked up to the driver's door area of the Honda and at close range shot Mr. Scott in the heart, fatally wounding him. Immediately prior to the shooting, [Appellant] removed a backpack from Mr. Scott's Honda containing marijuana. [Appellant] and Mr. Droz fled the scene and were eventually picked up by Mr. Janey, Mr. Palmer and Mr. Thompson, whereupon the five men returned to Mr. Palmer's residence in the City of Chester to divide the marijuana amongst the five of them.

PCRA Court Opinion (PCO), 10/20/15, at 2-3 (citations to the record omitted).

The PCRA court also provided a summary of the procedural history of

Appellant's case:

On March 31, 2014, [Appellant] entered into a negotiated guilty plea agreement on criminal information number 0939-2013 in which he pled guilty to one count of third-degree Murder,[2] one count of Robbery (Inflict Serious Bodily Injury),[3] and one count of Criminal Conspiracy to Commit Robbery.[4]

> [2] In violation of 18 Pa.C.S.A. § 2502(c).
> [3] In violation of 18 Pa.C.S.A. § 3701(A)(1)(i).
> [4] In violation of 18 Pa.C.S.A. § 903[;]18 Pa.C.S.A. § 3701(A)(1)(i).

On that same day, the trial [c]ourt imposed the following negotiated sentence: on the one count of third-degree Murder, [Appellant] received a sentence of twenty (20) to forty (40) years of total confinement in a state correctional institution; on the one count of Robbery (Threaten to Inflict Serious Bodily Injury), [Appellant] was sentenced to seven (7) to fourteen (14) years of total confinement in a state correctional institution consecutive to the third-degree murder sentence; and on the one count [of] Criminal Conspiracy to Commit Robbery, [Appellant] was sentenced to three (3) to six (6) years of total confinement in a state correctional institution consecutive to the robbery sentence. Therefore, the aggregate term of total confinement in a state correctional institution is not less than thirty (30) years and not more than sixty (60) years.

Matthew Vassil, Esquire, represented [Appellant] during the negotiated plea agreement and sentencing hearing. [Appellant] did not seek a direct appeal to the Superior Court. However, on March 2, 2015, [Appellant] filed a timely *pro se* … []PCRA[] [p]etition. As this was the indigent [Appellant's] first PCRA Petition, the [c]ourt appointed Robert P. Brendza, Esquire, to represent him in all matters pertaining to the Petition. On April 7, 2015, Mr. Brendza petitioned the [c]ourt for leave to withdraw as PCRA counsel, filing a "no-merit" letter pursuant to the procedures outlined in **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988). On April 15, 2015, after an independent review of [Appellant's] PCRA petition, counsel's motion to

withdraw and all matters of record, the [c]ourt issued its Notice of Intent to Dismiss PCRA Petition ("907 Notice").

In the 907 Notice, it was explained to [Appellant] that his PCRA petition lacked arguable merit. It was further explained to [Appellant] that because his petition was devoid of merit, he was not entitled to relief under the PCRA and that he had twenty (20) days from the date of docketing of the 907 Notice to file a response. On June 29, 2015, [Appellant] filed his "Response to Notice of Intent to Dismiss PCRA" ("Response"). After reviewing the Response, the [c]ourt determined that it also lacked arguable merit and did not advance [Appellant's] PCRA claims. Consequently, we dismissed [Appellant's] PCRA petition on July 28, 2015.

PCO at 1-2 (citations to the record omitted).

Appellant filed a timely, *pro se* notice of appeal.[1] Appellant also timely complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise

---

[1] We note that Appellant had until Thursday, August 27, 2015, to file a timely notice of appeal. His notice was not time-stamped by the Clerk of Courts of Chester County until Tuesday, September 1, 2015. Appellant's notice, however, was hand-dated August 24, 2015, and the docket also indicates a "Document Date" of August 24, 2015. While Appellant's notice of appeal has attached to it a certified mail receipt from the United States Postal Service, that receipt is undated, and the Clerk of Courts did not include, in the certified record, the envelope in which Appellant's notice arrived. Given these circumstances, and because neither the trial court nor the Commonwealth mentions the timeliness of Appellant's appeal, we will consider his notice of appeal as being timely filed under the prisoner mailbox rule. *See Commonwealth v. Chambers*, 35 A.3d 34, 38 (Pa. Super. 2011) ("[I]n the interest of fairness, the prisoner mailbox rule provides that a *pro se* prisoner's document be deemed filed on the date he delivers it to prison authorities for mailing."); *see also Commonwealth v. Cooper*, 710 A.2d 76, 79 (Pa. Super. 1998) ("Where … the opposing party does not challenge the timeliness of the appeal and the prisoner's assertion of timeliness is plausible, we may find the appeal timely without remand.") (citation omitted).

statement of errors complained of on appeal.[2]  The PCRA court filed a Rule

1925(a) opinion on October 20, 2015.  Herein, Appellant presents one issue

in his "Statement of the Questions Involved[,]" yet appears in the argument

portion of his brief to be raising four claims for our review.  We paraphrase

(and reorder) those issues, as follows:

> I. Whether PCRA counsel was ineffective for seeking to withdraw from representing Appellant where counsel failed to adequately address whether Appellant's guilty plea was knowing and intelligent?
>
> II. Whether PCRA counsel was ineffective for failing to adequately address in his **Turner/Finley** no-merit letter, or file an amended petition on Appellant's behalf, raising the claim that the Commonwealth violated Appellant's negotiated plea agreement, resulting in Appellant's receiving a lengthier sentence than that which he agreed upon?
>
> III. Whether PCRA counsel was ineffective for not alleging trial counsel's ineffectiveness for failing to file a motion to suppress statements that he made to police?

---

[2] Another question of timeliness arises with regard to Appellant's Rule 1925(b) statement.  Specifically, that statement was due Wednesday, September 23, 2015, yet it was not docketed until Monday, September 28, 2015.  We cannot ascertain from the certified record the date on which Appellant submitted his Rule 1925(b) statement to prison authorities because, for some reason, his concise statement is not included in the record.  Notably, the docket entry for his Rule 1925(b) statement contains a "Document Date" of September 20, 2015, which aligns with the date written on the Rule 1925(b) statement Appellant attaches to his brief to this Court. We also note that the PCRA court deemed Appellant's Rule 1925(b) statement as being timely filed.  **See** PCO at 1 ("[T]his Opinion is filed pursuant to Pa.R.A.P. 1925 in response to [Appellant's] … *timely* Statement of Errors Complained of on  Appeal….") (emphasis added).  Because Appellant's concise statement was erroneously excluded from the certified record, we will accept the PCRA court's conclusion that it was timely filed under the prisoner mailbox rule.  **See Chambers**, 35 A.3d at 38.

IV. Whether the PCRA court erred by not appointing Appellant different PCRA counsel, when Attorney Brendza had previously represented Appellant's co-defendant, resulting in a conflict of interest in counsel's representation of Appellant?

*See* Appellant's Brief at 6, 8-9, 12-13, 15.

Our standard of review regarding an order denying post-conviction relief under the PCRA is whether the determination of the court is supported by the evidence of record and is free of legal error. ***Commonwealth v. Ragan***, 923 A.2d 1169, 1170 (Pa. 2007). This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding. ***Commonwealth v. Touw***, 781 A.2d 1250, 1252 (Pa. Super. 2001).

Here, in Appellant's first three claims, he asserts ineffective assistance of PCRA counsel.[3] Briefly,

> [t]o plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act.

***Commonwealth v. Rykard***, 55 A.3d 1177, 1189-90 (Pa. Super. 2012) (citations omitted).

---

[3] Appellant presented these claims in his timely-filed, *pro se* response to the PCRA court's Rule 907 notice of its intent to dismiss; thus, they are preserved for our review. ***See Commonwealth v. Ford***, 44 A.3d 1190, 1200 (Pa. Super. 2012) ("[I]ssues of PCRA counsel effectiveness must be raised in a serial PCRA petition or in response to a notice of dismissal before the PCRA court.").

Appellant first contends that Attorney Brendza failed to properly address, in his ***Turner/Finley*** no-merit letter, whether Appellant's guilty plea was knowing, intelligent, and voluntary. Specifically, Appellant takes issue with the fact that at the plea proceeding, the Commonwealth "state[d] on the record that there are some changes … to the plea colloquy[,]" and plea counsel then went over the changes with Appellant, during what the record indicates was a "[b]rief pause" in the proceeding.[4] ***See*** N.T. Plea, 3/31/14, at 2-3. According to Appellant, Attorney Brendza ineffectively failed "to speak to [him] about the brief pause that took place…." Appellant's Brief at 7. Appellant seemingly suggests that this 'brief pause'

_____

[4] The PCRA court describes the changes made to Appellant's written colloquy as follows:

> The changes made … included correcting the statutory maximum [sentence] for third-degree Murder and associated fine, modifying the Robbery subsection to correctly reflect that [Appellant] was pleading guilty to 18 Pa.C.S.A. § 3701(A)(1)(i) (inflicting serious bodily injury) instead of the Robbery, subsection 3701(A)(1)(ii) variant, and [amending] the corresponding Conspiracy charge.[18] The modifications did not change the grading of the offenses and they comported with the criminal Information originally filed. Moreover, none of the changes affected the length of incarceration contemplated in the negotiated sentence.
>
> > [18] Additionally[,] the following conditions were added: [Appellant] was required to pay $250 to have his DNA registered as a result of his felony convictions, the [c]ourt would impose restitution joint and several with two co-defendants, and [Appellant] would receive credit for time served from February 5, 2013 to March 31, 2014.

was inadequate to demonstrate that he knowingly, voluntarily, and understandingly initialed the changes made to the plea colloquy and, therefore, Attorney Brendza should have challenged the validity of the guilty plea, and/or the effectiveness of plea counsel, in an amended petition.

Appellant's arguments are meritless. First, in his *pro se* petition, Appellant did not assert, or even allude, that his plea was involuntary and/or unknowing because changes were made to the written colloquy and only a 'brief pause' was taken for Appellant to go over those amendments with plea counsel. Moreover, the record of the plea proceeding demonstrates that plea counsel discussed the changes in the plea colloquy with Appellant before the plea hearing, and that the 'brief pause' in the proceedings was only for Appellant to initial the additions to the written colloquy. *See* N.T. Plea at 3. Additionally, as the PCRA court stresses,

[t]he notes of testimony from the guilty plea hearing demonstrate that the court inquired at length concerning the terms of the written plea agreement between [Appellant] and the Commonwealth. Specifically, during the plea hearing, [Appellant] acknowledged that, by entering his pleas, he was admitting to having committed each of the specified crimes. [Appellant] also stated during the plea colloquy that he had been afforded sufficient time and opportunity to consult with counsel, and that he was satisfied with the legal representation that he had received. (N.T., 3/31/14, at 8). [Appellant] further advised the [c]ourt that he understood what he was doing and that he was entering the pleas voluntarily and of his own free will. (Written Colloquy, 3/31/14, 5-10; N.T., 3/31/14, at 2-11).

The record in this matter also indicates that [Appellant] acknowledged and accepted the changes made to his proposed sentence. (N.T., 3/31/14, at 11-16). Specifically, the record evidences that [Appellant] understood, acknowledged, and

> voluntarily initialed the changes made to the written guilty plea colloquy.
>
> …
>
> [Appellant] was present in open-court for all of the changes and initialed them on the written colloquy. As an additional safeguard, the [c]ourt paused the proceedings to ensure that [Appellant] understood and agreed to the modifications. ([N.T., 3/31/14,] at 2-3). Furthermore, [Appellant] answered all questions posed to him in open-court clearly[,] and stated that he had no questions about what he was doing. The [c]ourt even informed [Appellant, after the changes were discussed,] that he had the right to reject the negotiated agreement and proceed to trial on all of the charges brought against him. (**Id.** at 16). [Appellant] acknowledged that he had the right to a jury trial and understood that, by pleading guilty, he was relinquishing this and almost all of the appeal rights he otherwise would have. (Written Colloquy, 3/31/14, at 6-8; N.T., 3/31/14, at 10).

PCO at 5-6.

Based on this record, we ascertain no error in the PCRA court's conclusion that Appellant "had all of the information necessary to make an intelligent and informed decision on how to plead[,]" and that his decision to do so was knowing, intelligent, and voluntary. *Id.* at 6. Accordingly, Appellant has not demonstrated that Attorney Brendza acted ineffectively by not challenging the validity of Appellant's plea in *any* regard, let alone on the basis that there was only a 'brief pause' when Appellant initialed minor changes made to the written plea colloquy. Therefore, Appellant's first issue is meritless.

Next, Appellant argues that Attorney Brendza acted ineffectively because he,

> failed to adequately address, or file an [a]mended PCRA petition, and request an evidentiary hearing when [A]ppellant … did not

receive the negotiated plea deal that was presented to him for his participating in assisting the Commonwealth in prosecuting the other defendant's [*sic*] in this case. Specifically, Attorney Brendza did not address the issue in his no[-]merit letter. The record in this case demonstrates at the plea/sentencing hearing, the Commonwealth backed out of it's [*sic*] plea agreement of 25 to 50 years for [Appellant's] plea of guilt.

Appellant's Brief at 9.

Preliminarily, Attorney Brendza did address, in the **Turner/Finley** no-merit letter, Appellant's claim that his plea was invalid because he did not receive the agreed-upon sentence. **See** No-Merit Letter, 4/7/15, at 4-7. Moreover, Attorney Brendza could not have filed an amended petition raising this waived attack on the validity of Appellant's plea, where such claim could have been raised on direct appeal.[5] **See** 42 Pa.C.S. § 9543(a)(3) (stating that to be eligible for relief, the petitioner must plead and prove that "the allegation of error has not been previously litigated or waived"); 42 Pa.C.S. § 9544(b) (stating "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post[-]conviction proceeding").

In any event, the record does not support Appellant's claim that the Commonwealth violated the plea bargain by recommending a lengthier sentence. As Attorney Brendza emphasized in the no-merit letter, Appellant "acknowledged and accepted that [his] original plea offer of 25-50 years was

---

[5] Appellant does not argue that plea/appellate counsel was ineffective for failing to file a direct appeal presenting this issue.

- 10 -

revoked and changed to 30-60 years because of [Appellant's] failure to fully co-operate in testifying at the Tyrone Palmer trial." No-Merit Letter at 4 (citing N.T. Plea at 11-16). The record demonstrates that Appellant voluntarily, knowingly, and understandingly pled guilty knowing the sentence he faced. Accordingly, Appellant has failed to prove that Attorney Brendza acted ineffectively by not presenting this waived and/or meritless claim in an amended PCRA petition.

Next, Appellant presents a layered claim of ineffectiveness, contending that Attorney Brendza was ineffective for not asserting that plea counsel was ineffective for failing to file a motion to suppress statements Appellant made to police. According to Appellant, during questioning by police, he informed them that "his family [would] hire him an attorney," yet "[t]he police ignored [A]ppellant[,] … continued to question him[,] and [A]ppellant gave the police statements." Appellant's Brief at 15. Appellant claims that "[t]he police took the statements in the absence of counsel, and therefore the statements should be presumed involuntary and are inadmissible in any court proceedings." *Id.* (citations omitted). He also maintains that he informed Attorney Brendza that "he suffered from attention deficit disorder, and had other learning disabilities[,] that would render his statements to the police, and the guilty plea[,] involuntary." *Id.* at 16. Finally, Appellant avers that he,

> specifically brought this issue to the attention of PCRA counsel, arguing his statements should have been suppressed, thereby preventing the government from using them. Had PCRA counsel

raise[d] this ineffective assistance of [plea] counsel for failing to move to suppress his statements, [A]ppellant could have proceeded to trial, and avoided the guilty plea process entirely. He would have been able to testify to what exactly happened in this incident, proved it was self[-]defense, and not what he told the police after he requested an attorney would be hired by his family. The [c]ourt and PCRA counsel simply held this issue is waived.

Appellant's Brief at 16.

Initially,

[w]here the defendant asserts a layered ineffectiveness claim he must properly argue each prong of the three-prong ineffectiveness test for each separate attorney.

Layered claims of ineffectiveness are not wholly distinct from the underlying claims[,] because proof of the underlying claim is an essential element of the derivative ineffectiveness claim[.] In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel. If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue.

*Rykard*, 55 A.3d at 1190 (internal citations and quotation marks omitted).

Appellant's underdeveloped argument does not explain how each prong of the ineffectiveness test is satisfied, for both his plea counsel and his PCRA counsel, regarding his suppression claim. Additionally, he offers a completely inadequate discussion of the underlying suppression issue(s), except to say that he gave statements to police that should have been suppressed because he was denied his right to counsel, and because he had learning disabilities that made his statements involuntary. Notably, there are no statements by Appellant to police in the certified record, and nothing

in the record demonstrates, or even suggests, that Appellant gave any statement(s) to police. For instance, the Commonwealth did not mention that Appellant made any admissions or inculpatory statements to police when reciting the facts of the case at the guilty plea proceeding. *See* N.T. Plea at 4-6. Moreover, Appellant himself does not even offer any details about the alleged statements, such as when he provided them, the context in which they were given, or the content of what he said that inculpated him in the robbery and murder of Jamal Scott. Finally, Appellant does not discuss how his learning disabilities impacted the voluntariness of his statements and/or guilty plea. For all of these reasons, Appellant's argument is inadequate to prove that plea counsel was ineffective for failing to file a motion to suppress, and that Attorney Brendza was ineffective for not raising this issue in an amended petition.

In Appellant's last issue, he argues that the trial court erred by not appointing him new PCRA counsel when Attorney Brendza had a conflict of interest based on his representation of one of Appellant's co-defendants, Calvin Thompson. Appellant claims that "[t]he conflict of interest that exists in the PCRA proceedings require[s] the attention of this Court, in particular due to [A]ppellant's co-defendant['s] receiving a lighter sentence than [A]ppellant did, when [A]ppellant even cooperated with the prosecution in this case." Appellant's Brief at 14. Appellant devotes the majority of his argument to stressing that, in Attorney Brendza's initial no-merit letter, he denied that he had represented Thompson, yet counsel subsequently filed a

- 13 -

"Supplemental *Finley* Letter" stating that he "did indeed represent Mr. Thompson in 2014 as conflict PCRA counsel for his involvement in this same case." Supplemental *Finley* Letter, 4/15/15, at 1. Appellant contends that Attorney Brendza's initial denial of representing Thompson "sheds light on [Attorney Brendza's] inability to represent [A]ppellant fairly and impartially, and without a conflict of interest." Appellant's Brief at 13.

The record does not support Appellant's argument. While Attorney Brendza did initially state, in his no-merit letter, that he did not represent Thompson, he filed his Supplemental *Finley* Letter just eight days later and candidly admitted his error. Attorney Brendza then explained why his representation of Thompson did not cause a conflict of interest in his representation of Appellant, stating:

> It is not an automatic conflict of interest for an attorney to represent multiple co-defendants in the same criminal case. What factors define a conflict of interest can be found in the Rules of Professional Conduct at number 1.7. This rule explains that a conflict of interest will exist if the representation of one client will be directly adverse to another client or if there is a significant risk that representation of one or more clients will be materially limited by []the lawyer's responsibilities to another client.
>
> As a PCRA counsel, I am not involved in how cases are resolved. I take no part in developing or executing trial tactics if the case is resolved by trial or in recommendations or arguments aimed at achieving an acceptable sentence if the case is resolved by a plea.
>
> As PCRA counsel[,] I can only work with the facts that are already established. Therefore, if co-defendants in the same case resolve their case and then file … PCRA petitions, I can represent them both, without conflict, as long as the claims of

> one co-defendant are not adverse or [in] conflict with the claims of the other.
>
> In your particular case, you and Mr. Thompson do not raise PCRA issues that are in conflict with those raised by the other. In other words, my representing either of you is not adverse to the other's position and my representation of one of you does not materially limit my representation of the other. Therefore, by rule, no conflict of interest exists.

Supplemental *Finley* Letter at 1-2.

Attorney Brendza is correct that representation of co-defendants, alone, does not constitute a conflict of interest. *See Commonwealth v. Breaker*, 318 A.2d 354, 356 (Pa. 1974) ("[D]ual representation alone does [n]ot amount to a conflict of interest.") (citations omitted). Additionally, it is the defendant's burden to "demonstrate that a conflict of interest actually existed…," and that "the possibility of harm" was present. *Id.* (citations omitted). An "appellant will satisfy the requirement of demonstrating possible harm, if he can show, *inter alia*, 'that he had a defense inconsistent with that advanced by the other client, or that counsel neglected his case in order to give the other client a more spirited defense.'" *Id.* (citation omitted).

Here, it is important to stress that Attorney Brendza represented Thompson in collateral proceedings that occurred in 2014, *prior* to his representation of Appellant which began in March of 2015. Appellant does not explain how Attorney Brendza's subsequent representation of him, in these collateral proceedings, conflicted with counsel's prior representation of Thompson, also in collateral matters. Instead, Appellant only mentions the

fact that Thompson received a 'lighter sentence' than Appellant. However, we fail to see how this fact, in and of itself, would raise any concern that Thompson and Appellant would have conflicting strategies or issues on collateral review. Thus, Appellant has not demonstrated any possible conflict by Attorney Brendza in representing both men, especially when that representation was not concurrent. Thus, the record supports Attorney Brendza's conclusion that he did not have a conflict of interest in representing Appellant. Consequently, the PCRA court did not err in refusing to appoint new PCRA counsel for Appellant. Appellant's fourth and final claim is meritless.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/26/2016